# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-1854

GARY D. BRADLEY, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 24, 2008                    Decided November 26, 2008)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Debra L. Bernal*, with whom *Paul J. Hutter*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and DAVIS, *Judges*.

KASOLD, *Judge*: Vietnam War veteran Gary D. Bradley appeals through counsel two separate March 3, 2006, decisions of the Board of Veterans' Appeals (Board) that (1) determined that there was no clear and unmistakable error (CUE) in an August 1994 regional office (RO) rating decision assigning an effective date of December 16, 1987, for the grant of a separate compensable rating for shell fragment wounds of the right knee and the left axillary/shoulder area; (2) denied an earlier effective date of November 21, 1969, for residual scarring of the left buttock, the right buttock, the right thigh, the right wrist, and injuries to muscle group (MG) XIII for the left thigh, MG VII for the distal left forearm, MG VII for the right lower arm/wrist, MG XII for the left ankle, MG II for the left shoulder/axillary area, MG XXI for the left chest, and MG XI for the right lower leg; (3) denied an earlier effective date of June 8, 1992, for residual scarring of the right elbow, the left elbow, left forearm, right inner leg, left ankle, and left lower chest; (4) denied a disability compensation rating in excess of 10% for residual scarring of the right buttock, left buttock, right

thigh, left forearm/wrist, left thigh, left lower leg/ankle/left foot, right lower leg, right knee area, left lateral chest wall, left shoulder/axillary area, and right lower arm/wrist; (5) denied a disability compensation rating in excess of 10% for injuries to MG XII right thigh, MG X left foot, MG XIII left thigh, MG VII left distal forearm, MG VII right wrist, MG XII left ankle, MG XXI left chest, and MG XI right lower leg; (6) denied a disability compensation rating in excess of 20% for injuries to MG XVII for the right buttock, MG XVII for the left buttock, and MG II for the left shoulder/axillary area; (7) denied entitlement to special monthly compensation (SMC); and (8) denied entitlement to service connection for chronic pain syndrome. For the reasons stated below, the decision of the Board will be affirmed in part, and set aside in part, reversed in part, and several matters remanded for further adjudication.

## I. BACKGROUND

Mr. Bradley served on active duty with the U.S. Army from February 1968 to November 1969, including service in Vietnam. On August 29, 1969, he sustained multiple shell fragment wounds (SFWs) to his chest, legs, arms, and his right ear from a "booby trap" explosion. Record (R.) at 153, 174. As a result of these wounds, Mr. Bradley received a Purple Heart. R. at 83.

In December 1969, Mr. Bradley applied for compensation and pension for "M.F.W. [multiple fragment wounds] both LEGS, both ARMS [,] left chest & a peice [sic] of Rt. Lobe of ear taken off 8-28-69." R. at 191-92. Based upon skin and orthopedic examinations in 1970, a November 1970 regional office (RO) decision awarded Mr. Bradley a 10% disability compensation rating for SFWs of his left ankle and foot, a 10% disability compensation rating for tender and painful scars of his left thigh, with a retained foreign body, and a noncompensable rating for multiple scars of both legs, both arms, and his left lower chest, effective from November 21, 1969. R. at 219-20. Mr. Bradley underwent additional medical examinations in August and September 1971. R. at 247, 271-72. After these examinations, the Secretary issued a September 1971 rating decision that determined that the additional examinations did not warrant a change in the appellant's rating. R. at 250. Subsequent rating decisions issued in 1976 and 1977 also confirmed the initial disability ratings. (R. at 328, 348, 367, 373, 397).

In July 1983, the RO continued the ratings for the initial service-connected injuries. It also

2

awarded Mr. Bradley a 20% disability compensation rating for SFWs to his right buttock, a 20% disability rating for his left buttock, and a 10% disability rating for his right quadriceps, all effective March 25, 1983. Mr. Bradley also received a 30% disability compensation rating for post-traumatic stress disorder (PTSD), effective March 25, 1983. In August 1985, the RO assigned Mr. Bradley a single 10% disability compensation rating for multiple scars of both legs, both arms, and his left lower chest, effective from August 1984. In June 1991, the RO increased Mr. Bradley's disability rating for PTSD from 30% to 70% and awarded him total disability for individual unemployability (TDIU), effective December 1987. A Board decision in January 1997 changed the effective date from December 1987 to March 25, 1983, for both PTSD and TDIU. Additionally, the 1997 Board decision determined that there was no CUE in the rating decisions of November 1971, June 1971, September 1971, April 1973, February 1976, December 1976, February 1982, and November 1982, for the ratings assigned to Mr. Bradley's service-connected injuries. In August 1994, Mr. Bradley received additional disability compensation awards of 10% for residuals of SFWs to his right knee, and 10% for a gunshot wound to his left shoulder, both effective December 1987.

In May 1999, Mr. Bradley filed a Notice of Disagreement (NOD) to the January 1999 RO decision that reopened but denied an increased rating claim for multiple scar injuries to his left elbow, left forearm, right leg, right arm, left leg and left lower chest. Subsequently, an October 1999 Statement of the Case (SOC) awarded separate 10% disability compensation ratings for scars to Mr. Bradley's lower chest, left ankle, right elbow, right inner leg, left forearm, and left elbow, with an effective date of May 31, 1994.[1] In January 2000, Mr. Bradley raised in an NOD to the January 1999 RO decision, and the October 1999 SOC, the Secretary's failure to adjudicate SMC benefits which the RO denied in an October 2000 decision. Following an appeal of the Board's assignment of an effective date of June 1992 for the disability ratings for his left elbow, left forearm, right inner leg, right elbow, left ankle, and left lower chest, and after the Court's grant of a joint remand based upon Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. 106-475, 114 Stat. 2096 (codified in part at 38 U.S.C. § 5103), a July 2003 rating decision awarded additional disability compensation ratings

---

[1] The October 1999 SOC modified the August 1985 RO decision – which previously awarded a single 10% disability compensation rating for the multiple scars of Mr. Bradley's legs, arms, and lower chest – and awarded individual ratings for the left chest, left ankle, right elbow, right inner leg, left forearm and left elbow. A December 2001 Board decision changed the effective date from May 31, 1994, to June 8, 1992, for the scar ratings.

of 10% for scars to Mr. Bradley's buttocks and right thigh, and a noncompensable rating for his right ear, all effective from February 24, 2000. In January 2005, in response to Mr. Bradley's November 2003 NOD to the RO's July 2003 decision, a decision review officer assigned ratings for various muscle group injuries including a 20% disability compensation rating for left axillary area (previously claimed as a left-shoulder injury), and 10% disability compensation ratings for the left forearm, the right forearm/arm/wrist, left ankle, left thigh, and lateral chest. The RO also awarded an additional 10% disability compensation rating for scars of Mr. Bradley's right wrist. The January 2005 rating decision reflects that Mr. Bradley received ratings for 13 compensable scars and 10 separate muscle group injuries. The decision notes that he was granted individual unemployability from March 25, 1983, until June 8, 1992, and that he was granted a 100% combined rating from June 8, 1992.

Mr. Bradley appealed to the Board the effective dates and disability compensation ratings for the multiple scarring and muscle injury awards, as well as the denial of SMC and service connection for chronic pain syndrome. The Board issued two decisions on March 3, 2006, denying all his claims. On appeal to the Court, Mr. Bradley argues that the Board erred by: (A) considering and deciding a request for revision of the August 1994 RO decision based on CUE that Mr. Bradley asserts he never made; (B) not assigning an earlier effective date for all his service-connected scars and muscle injuries; (C) not awarding a separate disability compensation rating for each scar injury and each muscle injury; (D) not awarding SMC; (E) denying service connection for his chronic pain syndrome; and (F) providing an inadequate statement of reasons or bases for the denial of service connection for his chronic pain syndrome.

The Secretary suggests that a partial remand is in order so that he can evaluate whether Mr. Bradley may be awarded a separate disability compensation rating for each separate scar, but refutes the assignment of separate ratings for his muscle injuries, and further argues that the remainder of the Board's findings are plausible and should be affirmed.

## II. ANALYSIS

### A. CUE in the August 1994 RO Decision

Mr. Bradley argues that the Board erred in addressing whether there was CUE in the August 1994 RO decision that assigned December 16, 1987, as the effective date for service connection for

his right knee and left axillary/shoulder area, because he never submitted a request for revision based on CUE. The record on appeal contains no specific request by Mr. Bradley for revision of the August 1994 RO decision, although a September 1994 letter from the RO to Mr. Bradley states that the claim for CUE submitted by his attorney could not be accepted as a valid CUE claim because "it is not specific as to the error in fact or law." R. at 1375. The record contains no NOD or SOC associated with the September 1994 letter.

Nevertheless, without explanation, a March 2005 RO decision addressed the allegation of CUE in the August 1994 RO decision. On October 18, 2005, Mr. Bradley filed an NOD to this decision denying CUE in the August 1994 RO decision. R. at 354. However, no SOC was issued in response to Mr. Bradley's NOD, although an SOC dated June 21, 2005, addresses the issue of entitlement of an earlier effective date based upon "difference of opinion" citing 38 C.F.R. § 3.105(b) (2008), and includes the conclusion that "[t]here is no evidence of clear and unmistakable error, nor is there evidence of an earlier unadjudicated claim" with regard to his right knee and left axillary area/shoulder. R. at 2634-35. In addition, an SOC dated September 14, 2005, includes similar language. Yet both of these SOCs were issued before Mr. Bradley filed his October 18, 2005, NOD to the March 2005 RO decision on the issue of CUE in the August 1994 decision. In an October 18, 2005, letter in lieu of a VA Form 9, Substantive Appeal, Mr. Bradley stated that "[t]he statement of the case does not explain why § 3.105(a) [revision based on CUE] is not applicable, it merely declares that matter as fact." R. at 3347.

In his brief, the Secretary argues that Mr. Bradley abandoned his administrative appeal of CUE in the August 1994 RO decision by not specifically arguing it on appeal. However, at oral argument, the Secretary contended that Mr. Bradley's Substantive Appeal, which argues that he was "entitled to revision of the prior decisions of the VA which failed to note and award disability compensation for **all** of the disabilities suffered" upon discharge from service, (R. at 3349) (emphasis in original), should be read broadly to constitute his presentment of the issue on appeal. The Secretary could not identify, however, Mr. Bradley's arguments made on this matter to the RO or the Board.

Once a claimant files a timely NOD to an RO decision and a disagreement still exists after further development, the Secretary must prepare an SOC. 38 U.S.C. § 7105(b)(1), (d)(1). The

failure to issue an SOC in response to a timely filed NOD leaves the claim in an unadjudicated, pending, nonfinal status. *Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (holding that where the VA failed to furnish the veteran with an SOC, the RO decision did not become final). In this instance, Mr. Bradley filed a timely NOD on October 18, 2005, specifically contesting the March 2005 RO decision denying an earlier effective date for various scars based upon an allegation of CUE in an August 1994 decision. However, the record contains June and September SOCs that conclude without further explanation that no CUE existed, and the record does not contain an SOC issued after Mr. Bradley's October 2005 NOD.

Succinctly stated, the procedural posture of this case is confusing and the Board's statement of reasons or bases inadequately addresses this matter, frustrating judicial review. *See Allday v. Brown,* 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"). Accordingly, remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy."); *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (noting that "an inadequate record frustrates judicial review"); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *Occidential Petroleum Corp. v. SEC*, 873 F.2d 325, 347 (D.C. Cir. 1989) ("The proper course in a case with an inadequate record is to vacate the agency's decison and to remand the matter to the agency for further proceedings."); *Falk v. West*, 12 Vet.App. 402, 405 (1999) (same).

### B. Earlier Effective Date

#### *1. Initial Claim*

Mr. Bradley argues that because each and every injury existed upon his discharge from service, the effective date for all his service-connected scars and muscle injuries should be November 21, 1969, the date of his original service-connection claim. He contends that the disability ratings for scars and injuries awarded after November 1970 constituted part of his initial

claim for compensation, and were not the result of new claims for increased compensation based upon his condition worsening. His argument is not supported by the record or the law.

The November 1970 RO decision addressed his initial claim for injuries to both legs, both arms, right earlobe, and left chest, and awarded a 10% disability rating for painful scars to his left thigh with a retained foreign body, and a 10% disability compensation rating for shell fragment wounds to his left ankle and foot. This RO decision also awarded a noncompensable rating for multiple scars to both legs, both arms, and the left lower chest, and noted healed scars to his lower extremities specifically refering to a November 1969 examination. In sum, the 1970 RO decision addressed Mr. Bradley's November 1969 claim for disabilities arising from the booby trap explosion sufficiently for him to deduce that his claim had been adjudicated. *Compare Ingram v. Nicholson*, 21 Vet.App. 232, 247 (2007) (holding that "an RO decision may constitute an adjudication of a claim where the RO decision addresses the claim in a manner sufficient for a claimant to deduce that the claim was adjudicated") *with Deshotel v. Nicholson*, 457 F.3d 1258, 1261 (2006) ("Where the veteran files more than one claim with the RO at the same time, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claim, the second claim is deemed denied, and the appeal period begins to run."). Mr. Bradley could have appealed the November 1970 decision, but he did not, and it became final, subject only to attacks based on CUE with regard to its effective date. *See* 38 U.S.C. §§ 5109A, 7105(a), (c), 7111; 38 C.F.R. §§ 3.105(a), 20.302(a) (2008), 20.1403 (2008).

*2. Revision Under 38 C.F.R. § 3.105(b)*

Mr. Bradley alternatively argues that RO decisions in June 1983, August 1985, June 1994, October 1999, July 2003, and January 2005, which awarded disability compensation ratings for additional scars and muscle injuries, demonstrated a difference of opinion among the ROs, and warranted revision of the November 1970 decision to reflect the additional compensation ratings as having an effective date of November 1970. In support of his argument, Mr. Bradley relies on 38 C.F.R. § 3.105(b), which requires Central Office review if an adjudicative agency believes an earlier decision warrants revision or amendment. Specifically, the regulation states:

> Difference of opinion. Whenever an adjudicative agency is of the opinion that a revision or an amendment of a previous decision is warranted, a difference of opinion being involved rather than a clear and unmistakable error, the proposed revision will

> be recommended to Central Office. However, a decision may be revised under
> § 3.2600 without being recommended to Central Office.

38 C.F.R. § 3.105(b). Mr. Bradley contends that this regulation required the ROs that rendered decisions in 1983, 1985, 1994, 1999, and 2003, to recommend to the Central Office a change to the November 1970 RO decision based on their difference of opinion, as opposed to issuing their own, separate decisions. The Secretary argues that § 3.105(b) is implicated only when the adjudicative agency has the opinion that a revision or amendment is warranted before a decision becomes final, and that it provides no procedural rights to a claimant to demand referral to the Central Office. We agree with the Secretary. Mr. Bradley reads into this regulation what is not there.

When interpreting a statute or regulation, the "'starting point is its language.'" *Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)); *see also Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to the canons of construction."). "Where a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe." *See Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd,* 513 U.S. 115 (1994). The plain language of the regulation states that it is the adjudicative agency that must believe that a revision is warranted, based upon a difference of opinion between the adjudicating authorities. Moreover, the decision whether to revise a prior decision under § 3.105(b) is committed entirely to the adjudicating authority's discretion without any manageable standards to evaluate that decision, and the Court therefore has no jurisdiction to review such a decision, whether it is rendered explicitly or implicitly. *See Werden v. West*, 13 Vet.App. 463, 467 (2000).

Accordingly, the fact that Mr. Bradley has a difference of opinion with the 1970 RO and believes it should be revised is of no consequence. Further, Mr. Bradley cites to nothing in the record to support his assertion that the adjudicating authorities in this instance believed a revision of a prior decision was warranted and simply failed to refer the matter to the Central Office, as required by § 3.105(b); indeed the record reveals that the adjudicating authorities believed new ratings were warranted (and they issued them), not that previous ratings should be revised. If Mr. Bradley wishes to seek revision of a final decision, he must do so pursuant to 38 U.S.C.

§§ 5109A(c), 7111(c) and their implementing regulations, 38 C.F.R. §§ 3.105, 20.1403(c).

### 3. Informal Claims

Mr. Bradley argues, again alternatively, that the medical examinations of August and September 1971 constituted informal claims for increased disability ratings for all the scars and muscle injuries identified by the medical evidence, and that the Secretary should have ascertained if his disabilities increased within one year prior to these informal claims, as required by 38 U.S.C. § 5110(b)(2), providing for an effective date as early as August 1970. This argument, however, ignores the fact that a September 1971 RO decision explicitly refers to the September 1971 medical examination report as the last and most current one on record. The September 1971 RO decision confirms the prior disability ratings, and in doing so, it denies the informal claims for increased disability compensation. Although the RO decision does not explicitly mention the August 1971 medical examination report, there is a presumption that the RO considered all the evidence of record before making its decision, and Mr. Bradley has not demonstrated otherwise. *See Gonzales v. West*, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) ("hold[ing] that absent specific evidence indicating otherwise, all evidence contained in the record at the time of the RO's determination . . . must be presumed to have been reviewed by the Department of Veterans Affairs").

Moreover, although Mr. Bradley filed an NOD to this decision and an SOC issued in October 1971, the record on appeal does not reflect that he filed a Substantive Appeal to the September 1971 RO decision, and it became final. *See* 38 U.S.C. § 7105(d)(3) (noting that a formal appeal should be filed within 60 days of the issuance of an SOC or the veteran should request an extension of time); *Roy v. Brown*, 5 Vet.App. 554, 556 (1993) (RO decision becomes final when claimant fails to file timely Substantive Appeal and VA does not waive timely filing requirement); 38 C.F.R. § 20.302(b) (requiring that a Substantive Appeal be filed within 60 days from the date the RO mails the SOC or within one year from the RO's mailing of the adverse decision). Mr. Bradley fails to demonstrate that the informal claims arising from the August and September 1971 medical examination reports were unadjudicated, or that the Board erred by not addressing these informal claims. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999), *aff'd*, 232 F.3d 908 (Fed. Cir. 2000) (concluding that appellant had the burden of demonstrating error in the Board's decision); *cf. Brannon v. West*, 12 Vet.App. 32, 35 (1998) (holding that the Board must "adjudicate all issues

9

reasonably raised by a liberal reading of the appellant's [S]ubstantive [A]ppeal including all documents and oral testimony in the record prior to the Board's decision" ).

### C. Separate Individual Ratings for Each Scar and Muscle Injury

#### *1. Individual Ratings for Each Scar*

The parties agree that remand is warranted so that the Board can address whether separate disability ratings for individual scars are appropriate under 38 C.F.R. § 4.118, Diagnostic Code (DC) 7804 (2008). The Secretary notes that similar action was taken in the case of *Jones (Charles) v. Principi*, 18 Vet.App. 248, 261 (2004), which remanded the matter of whether scars under DC 7804 are to be rated individually or cumulatively. In this instance, the Board's statement of reasons or bases inadequately addresses this matter and remand is appropriate. Although the Board addressed the applicable ratings for skin disorders, including scarring under DCs 7801, 7803, 7804 and 7805, under both the pre- and postamended criteria,[2] the Board failed to discuss the implication of *Jones* and whether Mr. Bradley's scars warranted individual ratings.

#### *2. Individual Ratings for Each Muscle Injury*

Mr. Bradley relies on *Jones*, *supra*, to support his argument that each muscle injury should be assigned a separate rating, but his argument is misplaced. Although the Court in *Jones* remanded the issue of multiple ratings for scars, it noted, inter alia, that muscle injuries are evaluated pursuant to 38 C.F.R. § 4.56(b) for each group of muscles damaged. The *Jones* Court held that "*each group* of muscles damaged" is entitled to separate ratings, not each muscle that is damaged. *Id*. at 258 (emphasis added). Mr. Bradley offers no rationale for now finding otherwise.

### D. Chronic Pain Syndrome

The record supports Mr. Bradley's argument that the Board failed to provide an adequate statement of reasons or bases with regard to his chronic pain syndrome. The Board stated in its conclusions of law that Mr. Bradley's chronic pain syndrome "was not incurred or aggravated by the veteran's period of active duty." R. at 6. However, the Board also found that a January 2003 VA examination diagnosed him "with chronic pain syndrome as directly related to his already service-connected residual scars and SFW." R. at 33. Yet, the Board provided no explanation for, or

---

[2] The Secretary amended the skins disorders rating criteria in August 2002, while Mr. Bradley's appeal was pending. *See* 67 Fed. Reg. 49,590 (July 31, 2002) and 67 Fed. Reg. 58,448 (Sept. 16, 2002).

reconciliation of, the obvious inconsistency in these two statements, frustrating judicial review. *See Allday,* 7 Vet.App. at 527 (holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as facilitate informed review in this Court").

Additionally, the rating schedule provides ratings for a pain disorder under a mental disorders section, *see* 38 C.F.R. § 4.150, DC 9422 (2008), and a January 2003 compensation and pension examination included a mental evaluation as well as a physical evaluation of Mr. Bradley's scars and muscle injuries (*see* R. at 2099), yet the Board failed to discuss mental pain syndrome and its relationship, if any, to Mr. Bradley's diagnosed chronic pain syndrome. The Board is required to consider all reasonably applicable provisions of law and regulation, and to provide an adequate statement of the reasons or bases for its findings of fact and conclusions of law sufficient to permit judicial review of its determinations. *See* 38 U.S.C. § 7104(a), (d)(1); *Schafrath v. Derwinski,* 1 Vet.App. 589, 592-93 (1991) (stating that the Board must consider and discuss all applicable provisions of law and regulation where they are made "potentially applicable through the assertions and issues raised in the record"); *Allday* and *Tucker,* both *supra.*

Mr. Bradley also argues that the Board failed to consider secondary service connection for his chronic pain syndrome, however, this argument is mooted by virtue of the remand due to the Board's inadequate statement of reasons or bases with regard to his chronic pain syndrome. *Dunn v. West,* 11 Vet.App. 462, 467 (1998) (remand of claim under one theory moots the remaining theories advanced on appeal).

### E. Special Monthly Compensation

Mr. Bradley argues that he is entitled to SMC because he has a 100% combined rating for his disabilities other than PTSD, and an additional 70% disability for his PTSD, or, alternatively, that he has a 100% TDIU rating for his PTSD and additional disabilities rated at 60% or more.

The pertinent statutory authorization for special benefits provides that SMC shall be provided to a veteran with a total disability and additional disabilities rated at 60% or more. Specifically, the statute states:

> If the veteran has a service-connected disability rated as total, and (1) has additional service-connected disability or disabilities independently ratable at 60 percent or more, . . . then the monthly compensation shall be $2,766."

11

38 U.S.C. § 1114(s).  The relevant part of the implementing regulation states that "[t]he special monthly compensation provided by 38 U.S.C. § 1114(s) is payable when the veteran has a single service-connected disability rated as 100 percent and [has] additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems."  38 C.F.R. § 3.350(i) (2008).  The heart of the issue is what qualifies as a "total" rating for SMC purposes.  The Court reviews the interpretation of statutes and regulations de novo.  *See* 38 U.S.C. § 7261(a)(1); *Ferenc v. Nicholson*, 20 Vet.App. 58, 60 (2006) (citing *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003)); *Cacatian v. West*, 12 Vet.App. 373, 376 (1999).

*1. Mr. Bradley's 100% Combined Rating Argument*

"The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp.* , 508 U.S. at 409 (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).  In this instance, it is clear from the use of the language and the structure of the sentence that Congress did not intend that a 100% combined rating suffices for "a service-connected disability rated as total."  38 U.S.C. § 1114(s).

Congress used the article "a" and singular "disability" when establishing "a service-connected disability rated as total" as one of the requirements for SMC under section 1114(s).  In contrast, Congress permits the second requirement to be met with either a single "disability or disabilities independently" rated at 60%.  This demonstrates congressional understanding that multiple disabilities can be combined into a single rating, as well as congressional authorization for combined ratings to satisfy the second requirement but not the first.  "Where Congress introduces language in one section yet omits it in another, the disparate inclusion or exclusion is deemed intentional." *Norfolk Dredging Co., Inc. v. United States*, 58 Fed. Cl. 167, 176 (2003); *Babbitt v. Oglala Sioux Tribal Pub. Safety Dep't*, 194 F.3d 1374, 1378 (Fed. Cir. 1999) (stating that "we must assume that Congress 'says in a statute what it means and means in a statute what it says there'" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992))); *Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("[A] functioning system of laws must give primacy to the plain language of authorities. Without standard word meanings and rules of construction, neither Congress nor the Secretary can

know how to write authorities in a way that conveys their intent and no practitioner or – more importantly – veteran can rely on a statute or regulation to mean what it appears to say."); *Gardner*, 1 Vet.App. at 586 ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute.").

Mr. Bradley argues that since all his scar and muscle injuries arose out of a single accident – the in-service explosion – these injuries should be treated as a single disability, entitling him to a total rating. In support of his argument, he notes that for purposes of establishing schedular TDIU, multiple disabilities arising from a single accident are considered one disability. *See* 38 C.F.R. § 4.16(a)(2008). However, this argument fails to recognize that the direction to treat multiple disabilities as one is specifically applicable only to TDIU ratings. Indeed, 38 C.F.R. § 4.25(b) (2008) requires that, except as otherwise provided, all disabilities are to be rated separately, confirming the understanding that the direction in § 4.16(a) to treat disabilities as one is an exception to the general rule, and limited to TDIU ratings. Mr. Bradley points to no such direction, and we find none, in section 1114(s) or its implementing regulation.

### 2. Mr. Bradley's TDIU Argument

Alternatively, Mr. Bradley contends that his TDIU award satisfies the statutory total rating requirement in 38 U.S.C. § 1114(s). The Secretary argues that this statute requires the total rating to be not only for a single disability, but a single schedular disability; e.g., a schedular rating of 100%. The Court interprets statutes de novo, *see* 38 U.S.C. § 7261 (Court interprets statutory and regulatory provisions); *Lane*, 339 F.3d at 1339 ("[I]nterpretation of a statute or regulation is a question of law ...." ); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (Court reviews "questions of law de novo without any deference to the Board's conclusions of law"), and begins with the language of the statute. *See Gardner, supra*.

Section 1114(s) states that a veteran is entitled to SMC when the veteran has "a service-connected disability rated as total" and a separate disability or disabilities rated at 60% or higher. It is well understood that "'Congress expresses its intent through the language it chooses' and that the choice of words in a statute is therefore deliberate and reflective." *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1347 (Fed. Cir. 2004) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 433 n. 12, 436 (1987)). In this instance, the phrase "a service-connected disability rated as total" contains

no restriction to a total schedular rating and no exclusion of other total ratings, such as a TDIU, and no such restriction or exclusion is present in the whole of section 1114 or the statutory scheme as a whole. *See Reno v. Koray*, 515 U.S. 50, 56-57 (1995) (construing statutory language in context of statutory scheme); *Kilpatrick v. Principi*, 16 Vet.App. 1, 7 (2002) (examining entire statutory scheme in interpreting meaning of statute). Moreover, at the time Congress drafted this legislation, TDIU ratings had been in existence for years. *See* Veterans Administration, The Schedule of Rating Disabilities, 1933 ed., Extension 4(l) (November 15, 1941) (providing for TDIU ratings); Pub. L. No. 86-663, 72 Stat. 1120 (July 14, 1960) (providing for SMC). Accordingly, Congress is presumed to have enacted section 1114(s) with knowledge of TDIU ratings and in harmony with those ratings. *Ramey v. Fed. Bureau of Prisons*, 222 F.3d 927, 932 (Fed. Cir. 2000) (citing *Canon v. Univ. of Chicago*, 441 U.S. 677, 696-98 (1979)). Congress also understood how to equate a total rating with a 100% schedular rating, *see* 38 U.S.C. § 1155 (in effect since at least 1958, prior to enactment of section 1114(s)), and easily could have excluded a TDIU rating from serving as a basis for establishing a total rating under section 1114(s) had it so chosen. It did not.

Further, in this instance, the procedural history associated with the Secretary's implementing regulation, 38 C.F.R. § 3.350(i) (1994), demonstrates that the Secretary's regulation authorizes a TDIU rating to fulfill the statutory total rating requirement. Initially, the Secretary's implementing regulation expressly prohibited a rating based upon individual unemployability from satisfying the "total" requirement of section 1114(s). However, based on a 1994 VA General Counsel opinion that section 1114(s) did not authorize this restriction, *see* VA Gen. Coun. Prec. 2-94 (Jan. 21, 1994), the Secretary promptly changed the regulation – by dropping the restrictive language, *see* 60 Fed. Reg. 12,886 (Mar. 9, 1995). When making this change, the Secretary also noted that "the plain and unambiguous language of 38 U.S.C. § 1114(s) does not restrict the nature of total ratings that may be used as a basis for entitlement to the rate of special monthly compensation which section 1114(s) authorizes." *Id*.

With the omission of the restrictive language, the regulation authorized a TDIU rating to serve as a basis for establishing a total rating under section 1114(s). *Cf. In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1151 (9th Cir. 1991) ("As a general canon of statutory construction, where the final version of a statute deletes language contained in an earlier draft, a

14

court may presume that the earlier draft is inconsistent with ultimate congressional intentions."); *see also Black & Decker Corp.*, 986 F.2d at 65 ("Regulations, like statutes, are interpreted according to the canons of construction."). And, this regulation has not been changed since the March 1995 amendment. Inasmuch as section 1114(s) does not exclude TDIU from satisfying the "total" rating requirement therein, the Secretary's change to regulation § 3.350(i) authorizing the use of TDIU to satisfy the "total" rating requirement of section 1114(s) is a plausible and reasonable interpretation of the statute and this regulation is entitled to substantial deference. *See Chevron*, 467 U.S. at 844 (affording deference to an agency's interpretation of a statute); *Livesay v. Principi*, 15 Vet.App. 165, 172 (2001) (en banc) ("The Court will sustain a regulation that is consistent with the language of the statute and is a plausible interpretation of the law.").

The Secretary argues that several years after § 3.350(i) was changed, the VA General Counsel issued a new opinion in 1999 to the effect that section 1114(s) excluded TDIU as a basis for establishing a total rating under that section. *See* VA. Gen. Coun. Prec. 6-99 (June 7, 1999). The Secretary further notes that the Board relied on this opinion. Although the Board is required to follow VA General Counsel opinions,[3] *see* 38 U.S.C. § 7104(c); 38 C.F.R. § 20.100(a) (2008), the Court is not, *see Mason v. Nicholson*, 20 Vet.App. 279, 293 (2006). Rather, the Court reviews the law de novo, *see Lane* and *Butts,* both *supra*, and gives the General Counsel's interpretation of the law deference "proportional to 'its power to persuade.'" *See United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140-41 (1944)).

As discussed above, we find nothing in section 1114(s), or the statutory scheme as a whole, that limits "a service-connected disability rated as total" to only a schedular rating of 100%. The 1994 VA General Counsel's opinion is consistent with this interpretation, as is the Secretary's understanding when he modified the implementing regulation, § 3.350(i), to remove the exclusion of TDIU from satisfying the total rating requirement of section 1114(s). Moreover, we believe that the Secretary's interpretation of the General Counsel's 1999 opinion – excluding TDIU as a basis for a total rating – is too expansive, and, so read, conflicts with the VA General Counsel's 1994

---

[3] One might question which VA General Counsel opinion the Board is required to follow, but given our disposition in this matter, we need not further address this issue.

15

opinion, our interpretation of the statute, and the Secretary's current regulation.[4]  However, we do not believe such a reading is necessary or warranted.

Although the 1999 VA General Counsel opinion generally states that section 1114(s) should not be read as authorizing SMC when a veteran has TDIU and a schedular rating of 60 % or more, this general statement is followed by a more specific explanation that narrows the scope of the general statement.  Specifically, the 1999 opinion noted that because TDIU takes into consideration all of a veteran's disabilities, allowing TDIU to satisfy the total disability requirement of section 1114(s), and one or more of the disabilities upon which the TDIU rating was awarded to satisfy the second requirement of an additional disability or disabilities of 60% or more, would result in the same disability being counted twice.  Thus, the 1999 opinion rested its general conclusion on the fact that permitting TDIU to establish a total rating under section 1114(s) would result in duplicate counting of disabilities.

However, this is not always the case.  It is possible for a veteran to be awarded TDIU for a single disability and thereafter be awarded disability ratings for other conditions.  Under these circumstances, there would be no duplicate counting of disabilities.  The 1999 opinion did not address this situation, and we will not read it for the proposition that all TDIU ratings are excluded from satisfying the 1114(s) total rating requirement, which would render it in conflict with the 1994 VA General Counsel opinion, our interpretation of section 1114(s), and regulation § 3.350(i).  *Cf. Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 875 (7th Cir. 1999) (noting that where there is no conflict between differing interpretations, there is no need to decide which controls); *see also Norfolk S. Railway Co. v. Shanklin*, 529 U.S. 344, 356 (2000) (giving no deference to an agency interpretation that conflicts with the agency's previous interpretation).

Accordingly, under the circumstances of this case, we need not decide the full scope and validity of the 1999 VA General Counsel opinion, or whether the Secretary permissibly may modify his regulation to exclude TDIU from satisfying the section 1114(s) requirement of a total rating.  We need only decide, and so hold, that section 1114(s) does not limit "a service-connected disability

---

[4] Substantive modifications to regulations may only be made after complying with the rule-making procedures of notice and comment, 5 U.S.C. § 553(b), (c); *Theiss v. Principi*, 18 Vet.App. 204, 213 (2004), procedures that were not followed with the issuance of the 1999 General Counsel opinion.

rated as total" to only a schedular rating of 100%, and the Secretary's current regulation permits a TDIU rating based on a single disability to satisfy the statutory requirement of a total rating.

## F. Application of 38 U.S.C. § 1114(s)

With regard to Mr. Bradley's TDIU rating, the record is confusing. A June 1991 RO decision confirmed his scar and muscle injury ratings, increased his PTSD rating from 30% to 70%, determined that he was unable to engage in substantially gainful employment, and awarded him TDIU, and a 1997 Board decision established the effective date of his TDIU as March 1983. The increased PTSD rating appears to be the basis for the TDIU award, however, the RO only generally stated that "the veteran's SC [service-connected] *disabilities* render him unemployable . . . " R. at 1126 (emphasis added). A January 2005, RO decision noted that Mr. Bradley received TDIU effective from March 1983 until June 1992 at which time he received a 100% combined rating.

The reason for the transition from TDIU to a 100% combined rating is not clear. A July 1983 RO decision reflects that Mr. Bradley had a combined disability compensation rating of 70% effective from March 25, 1983 (*see* R. at 539), and a June 1991 RO decision noted that Mr. Bradley's combined rating was 90% and further awarded TDIU from December 1987 (*see* R. at 1121-22), subsequently changed to March 1983 after a decision by the 1997 Board (R. at 1620). A January 4, 2002, RO decision records that Mr. Bradley has a 100% combined rating, effective June 8, 1992, but the record fails to contain an explanation for the transition from a TDIU rating to the 100% combined rating. At oral argument, the Secretary explained that the change from TDIU to a 100% combined rating was made because the combined rating was more beneficial to Mr. Bradley, and further noted that the TDIU rating was subsumed by the 100% combined rating.

The Secretary is required to maximize benefits, *see AB v. Brown* 6 Vet.App. 35, 38 (1993) (presuming that a claimant is seeking the maximum benefits allowed by law and regulation); 38 C.F.R. § 3.103(a)(2008) (noting VA's obligation to "render a decision which grants every benefit that can be supported in law"), and it appears it was his intent to do so in this case when he assigned a 100% schedular rating, subsuming the TDIU rating. However, under the circumstances of this case, a TDIU rating for PTSD alone would entitle Mr. Bradley to SMC benefits as an additional benefit not otherwise provided to persons with a 100% combined rating. Accordingly, the Secretary should have assessed whether Mr. Bradley's TDIU rating was warranted based on his PTSD alone before

17

substituting a combined total rating for his TDIU rating. Because a finding that Mr. Bradley's PTSD is sufficient, on its own, to warrant a TDIU rating, would mean that Mr. Bradley is also entitled to SMC, the decision denying him SMC will be vacated and the matter remanded for further adjudication.

Should the Secretary determine on remand that Mr. Bradley is entitled to a total rating based upon PTSD alone, and Mr. Bradley therefore qualifies for SMC (because he has additional disabilities other than PTSD rated at 60%), the proper effective date must be assigned. Although Mr. Bradley raised the issue of his entitlement to SMC in January 2000, these benefits are to be accorded when a veteran becomes eligible without need for a separate claim. *See Akles v. Derwinski*, 1 Vet.App. 118, 121 (1991) (noting VA's policy to consider SMC where applicable). Accordingly, any effective date must be based on that point in time when the evidence first supported an award of SMC, which may be well before Mr. Bradley raised the issue of his entitlement thereto. *See* 38 U.S.C. §§ 5110(a), 1114(s); 38 C.F.R. § 3.400(o) (2008).

### G. Remanded Matters

For those matters being remanded, Mr. Bradley will have the opportunity to present any additional evidence and argument in support of his claim, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The matters remanded are to be provided expeditious treatment. *See* 38 U.S.C. § 7112.

### III. CONCLUSION

That part of the Board's March 3, 2006, decisions denying earlier effective dates and increased disability ratings for Mr. Bradley's multiple muscle injuries is AFFIRMED; those parts of the decisions addressing CUE in the August 1994 RO decision, entitlement to ratings in excess of 10% for residual scarring, and service connection for chronic pain syndrome are SET ASIDE and the matters REMANDED for further adjudication; and that part of the decision denying special monthly compensation is REVERSED and the matter REMANDED for further adjudication.