Citation Nr: 1132114 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 07-03 436A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a total disability rating based on individual unemployability (TDIU).

2. Entitlement to special monthly compensation (SMC).

3. Entitlement to an initial rating in excess of 10 percent for degenerative joint disease of the lumbosacral spine prior to March 29, 2010.

4. Entitlement to a higher initial evaluation for degenerative joint disease of the lumbosacral spine, currently evaluated as 40 percent disabling.


REPRESENTATION

Appellant represented by: Disabled American Veterans



ATTORNEY FOR THE BOARD

D. Johnson, Counsel


INTRODUCTION

The Veteran served on active duty from January 1967 to November 1975, including combat service in Vietnam, and his decorations include the Purple Heart Medal.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a March 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St, Petersburg, Florida that granted service connection for the Veteran's low back disorder, and assigned an initial rating of 10 percent effective September 26, 2005. In a July 2010 rating decision, the RO increased the evaluation to 40 percent effective from March 29, 2010.

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the United States Court of Appeals for Veterans Claims (Court) held that a TDIU claim is part of a claim for a higher rating when such claim is raised by the record or asserted by the Veteran. VA also has a "well-established" duty to maximize a claimant's benefits. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Bradley v. Peake, 22 Vet. App. 280 (2008). Under this duty to maximize benefits, SMC benefits are to be accorded when a Veteran becomes eligible without need for a separate claim. See Bradley, 22 Vet. App. 280, 294 (2008). Therefore, the Board has included the issues of entitlement to TDIU and SMC as part of the appeal, as noted on the title page.

The issue of entitlement to an initial rating in excess of 10 percent for degenerative joint disease of the lumbosacral spine prior to March 29, 2010, and in excess of 40 percent thereafter is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. Service connection is in effect for posttraumatic stress disorder (PTSD) (50 percent), degenerative joint disease of the lumbar spine (40 percent), radiculopathy of the left lower extremity (40 percent) associated with degenerative joint disease of the lumbar spine; radiculopathy of the right lower extremity associated with degenerative joint disease of the lumbar spine (10 percent), tinnitus (10 percent), left ear hearing loss (0 percent), and decreased rectal sphincter tone (0 percent) associated with degenerative joint disease of the lumbar spine, for a total combined evaluation of 90 percent.

2. The Veteran's service-connected low back disability alone precludes him from securing and maintaining substantially gainful employment, for which a combined 70 percent rating has been in effect since March 29, 2010.

3. The Veteran's service-connected disabilities of PTSD and tinnitus are ratable as 60 percent disabling when combined.


CONCLUSIONS OF LAW

1. The criteria for a TDIU are met. 38 U.S.C.A. §§ 1154(a), 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.1, 4.16, 4.19 (2010).

2. The criteria for special monthly compensation at the housebound rate, effective March 29, 2010 have been met. 38 U.S.C.A. §§ 1114(s), 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.350 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In this decision, the Board grants entitlement to a TDIU and also grants entitlement to SMC. As such, no discussion of VA's duty to notify and assist is necessary. 

TDIU

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340 (2010). If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341 (2010). In evaluating total disability, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effects of combinations of disability. 38 C.F.R. § 4.15 (2010).

If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability, provided that the Veteran has one service-connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. The existence or degree of non-service connected disabilities will be disregarded if the above-stated percentage requirements are met and the evaluator determines that the Veteran's service-connected disabilities render him incapable of substantial gainful employment. 38 C.F.R. § 4.16(a). All Veterans who are shown to be unable to secure and follow a substantially gainful occupation by reason of service-connected disability shall be rated totally disabled. 38 C.F.R. § 4.16(b). In cases where the scheduler criteria are not met, an extraschedular rating is for consideration. 38 C.F.R. § 3.321.

The central inquiry is, "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). For the Veteran to prevail on his TDIU claim, it is necessary that the record reflect some factor which takes his case outside the norm of other such Veterans. 38 C.F.R. §§ 4.1, 4.15 (2010). The sole fact that the Veteran is unemployed or has difficulty obtaining employment is not enough. The assignment of a rating evaluation is itself recognition of industrial impairment. 

In this case, service connection is in effect for posttraumatic stress disorder (PTSD) (50 percent), degenerative joint disease of the lumbar spine (40 percent), radiculopathy of the left lower extremity (40 percent); radiculopathy of the right lower extremity (10 percent), tinnitus (10 percent), left ear hearing loss (0 percent), and decreased rectal sphincter tone (0 percent), for a total combined evaluation of 90 percent. The Board further notes that the service-connected degenerative joint disease of the lumbar spine, the radiculopathy of the left and right lower extremities, and the decreased rectal sphincter tone all result from a common etiology. 38 C.F.R. § 4.16(a). The application of the bilateral factor contained in 38 C.F.R. § 4.26 and the combined ratings table in 38 C.F.R. § 4.25 would yield a 51 percent for the bilateral lower extremity radiculopathy, that when rated with the 0 percent for the decreased rectal sphincter tone and the 40 percent for the low back disorder, results in a 71 percent combined rating, which in turn results in a single 70 percent evaluation. Accordingly, the percentage criteria for a TDIU under 38 C.F.R. § 4.16(a) are met. The question remaining then is whether the Veteran is precluded from obtaining or engaging in substantially gainful employment due to his service-connected disabilities. 

Based on the evidence of record, and resolving doubt in the Veteran's favor, the Board finds that he is precluded from obtaining or engaging in substantially gainful employment due to his service-connected back disability alone. On his February 2008 application for TDIU benefits, the Veteran reported that he had worked as an asphalt paver since shortly after military service. He stated that he had last worked full-time as an asphalt paver in December 2007 and had retired from this job due to disability. He indicated that he had completed four years of high school. 

In an undated statement submitted by the Veteran's wife, she reported that the Veteran had fallen and hurt himself during the last 12 months due to the numbness in his legs. She reported that he had been out of work for nearly 2 months while healing from his injury. She also reported that the numbness was constant and severe. In statements from the Veteran, he reported that he had been working laying asphalt pavement for parking lots. However, he could no longer shovel asphalt or ride the heavy equipment due to concerns that he will fall. He also reported that the numbness and weakness in his legs had increased. He stated that he had fallen off the asphalt truck and injured his leg and it took 2 months to heal.

VA treatment records show treatment for chronic low back pain with associated neurologic impairment in the lower extremities that interfered with gait and ambulation and activities of daily living. The records also reflect that the Veteran reported past employment as a salesman and also as a security officer. He reported that he sold his business as he was unable to continue working due to his physical disabilities. At a VA peripheral neuropathy examination in December 2008, the Veteran reported intermittent urinary and fecal incontinence with numbness in both legs, left greater than right, and in his foot. An MRI showed mild central canal stenosis at L1-S1 and L5-S1 mild to moderate bilateral neuroforaminal stenosis. The examiner's diagnosis was residuals of bilateral lower extremity sciatic nerve impingement with decreased rectal sphincter tone related to spinal radiculopathy. The examiner did not provide any opinion regarding the Veteran's employability. 

In an August 2009 statement, the Veteran's private physician indicated that he had evaluated the Veteran for his low back pain and left leg pain. He opined that the Veteran has an underlying permanent spinal neurologic condition from which he does not anticipate any predictable improvement. This physician further stated that the Veteran's condition had progressed to where he has ambulation of less than one block's duration and has a sitting and standing tolerance of less than 30 minutes. In another statement, this physician stated that based on the Veteran's significant limitations, he has been advised to remain out of work as [his condition] represents a permanent condition.

At VA orthopedic and neurologic examinations conducted in March 2010 and April 2010, the Veteran reported increased back pain, left leg weakness, occasional falls, severely decreased activity, and loss of motion due to pain. The March 2010 examiner provided a diagnosis of lumbar degenerative joint disease that was moderate to severe. He also noted that there were significant effects on the Veteran's usual occupation, but did not provide a specific opinion regarding whether or not the back disorder precluded substantially gainful employment. The April 2010 examiner provided a diagnosis of vertebral disc protrusion, nerve root impairment associated with the low back condition. He opined that the effects on the Veteran's occupation were significant and the Veteran is unable to work due to his chronic low back pain and radiating pain to his bilateral legs and feet. 

Based on the evidence, the Board resolves any doubt in the Veteran's favor to find that his occupational difficulties are primarily due to his service-connected low back disability and associated radiculopathy of the bilateral lower extremities, and that these difficulties preclude him from engaging in substantially gainful employment. The Board finds the April 2010 VA opinion to be competent and probative in this matter, as the VA examiner reviewed the claims file, included a synopsis of the Veteran's medical and social history, and performed an examination of the Veteran. A medical opinion that is a factually accurate, fully articulated, and based on sound reasoning carries significant weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). The Board also finds that the August 2009 private physician's medical findings further support a finding that the Veteran is unemployable due to his lumbar spine degenerative joint disease and associated bilateral lower extremity radiculopathy. Therefore, resolving doubt in the Veteran's favor and in consideration of his education level and his work experience, the Board finds that he is unemployable due to his service-connected lumbar spine degenerative joint disease disability alone.

SMC

The Board notes that the United States Court of Appeals for Veterans Claims (Court) has recently noted that VA has a "well-established" duty to maximize a claimant's benefits. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993). This duty to maximize benefits requires VA to assess all of a claimant's disabilities to determine whether any combination of disabilities establishes entitlement special monthly compensation (SMC) under 38 U.S.C.A § 1114. See Bradley v. Peake, 22 Vet. App. 280 (2008) (finding that SMC "benefits are to be accorded when a Veteran becomes eligible without need for a separate claim" and remanding, pursuant to VA's duty to maximize benefits, for VA to determine whether the Veteran's posttraumatic stress disorder, rated 70 percent disabling, would entitle him to a TDIU and, therefore, to SMC). 

Subsection 1114(s) requires that a disabled Veteran whose disability level is determined by the ratings schedule must have at least one disability that is rated at 100 percent in order to qualify for the special monthly compensation provided by that statute. Under the law, subsection 1114(s) benefits are not available to a Veteran whose 100 percent disability rating is based on multiple disabilities, none of which is rated at 100 percent disabling.

The Court has held that although a TDIU may satisfy the "rated as total" element of section 1114(s), a TDIU based on multiple underlying disabilities cannot satisfy the section 1114(s) requirement of "a service-connected disability" because that requirement must be met by a single disability. The Court declared, however, if a Veteran were awarded a TDIU based on multiple underlying disabilities and then later receives a schedular disability rating for a single, separate disability that would, by itself, create the basis for an award of a TDIU, that the order of the awards was not relevant to the inquiry as to whether any of the disabilities alone would render the Veteran unemployable and thus entitled to a TDIU rating based on that condition alone. Buie v. Shinseki, 24 Vet. App. 242, 250 (2010). 

In this case, the Board has granted the Veteran a TDIU based solely due to his low back disability with associated bilateral radiculopathy, as the evidence shows this disability is of sufficient severity to alone produce unemployability. The Board finds that although the low back disability was not rated as 100 percent, for SMC purposes this disability satisfies the requirement of a "service-connected disability rated as total." See Buie v. Shinseki, 24 Vet. App. 242, 251 (2011); see also Bradley v. Peake, 22 Vet. App. 280, 293 (2008). Because the Veteran has a single service-connected disability rated as total (i.e. his low back disability), and has additional service-connected disabilities (i.e. PTSD and tinnitus) that are rated at 60 percent combined, the criteria for SMC at the housebound rate are met as of March 29, 2010. Thus, in light of the Court's decisions in Bradley and in Buie, entitlement to SMC at the housebound rate under 38 U.S.C.A. § 1114(s) is granted, effective March 29, 2010. 


ORDER

Subject to the law and regulations governing payment of monetary benefits, entitlement to a TDIU is granted.

Subject to the law and regulations governing payment of monetary benefits, SMC at the housebound rate under 38 U.S.C.A. § 1114(s) is granted, effective March 29, 2010.

REMAND

The Veteran contends that his lumbar spine degenerative joint disease warrants a higher rating than 10 percent under the orthopedic codes and higher ratings for his right and left lower extremity radiculopathy that are separately rated. 

Unfortunately, a remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claims so that he is afforded every possible consideration. The Veteran requested an RO hearing before a Decision Review Officer (DRO) in his May 2006 Notice of Disagreement. That hearing was not held. The Veteran has a right to the requested hearing. Therefore, the case must be remanded to the RO to comply with his request.

The record shows that the Veteran was awarded disability benefits from the Social Security Administration (SSA), effective May 2009. As there may be additional SSA records that are potentially relevant to the Board's determination, VA is obliged to attempt to obtain and consider those records. 38 U.S.C.A. § 5103A(c)(3); 38 C.F.R. § 3.159(c)(2); see also Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009). The RO should also associate any pertinent, outstanding treatment records, dated since January 2010. See 38 C.F.R. § 3.159(c)(2); see also Bell v. Derwinski, 2 Vet. App. 611 (1992).

Accordingly, the case is REMANDED for the following action:

1. Associate any pertinent, outstanding VA treatment records, dated since January 2010. 

2. Obtain from the SSA any additional records pertinent to the Veteran's claim for SSA disability benefits and any medical records concerning that claim. All efforts to obtain the records should be fully documented, a negative response should be requested if no records are available.

3. Contact the Veteran and request that he identify any private medical providers that may have records relevant to his claim that are not already of record. After securing any necessary authorization, obtain the records. All efforts to obtain any medical reports made should be documented and incorporated into the claims file. 

4. Notify the Veteran that he may submit lay statements from himself as well as from individuals who have first-hand knowledge of his low back and radicular symptoms. Also, invite him to submit medical and hospitalization records, medical statements, and any other lay or medical evidence showing evidence of his disability. He should be provided an appropriate amount of time to submit this lay evidence. 

5. After all record development has been completed; the agency of original jurisdiction should schedule the appellant for a hearing before a DRO at the RO.

6. Then, after conducting any further development deemed warranted, including affording the Veteran additional VA examinations, if necessary, readjudicate the Veteran's claims of entitlement to initial ratings in excess of 10 percent, prior to March 29, 2010, and in excess of 40 percent since that time. In doing so, the RO must also consider whether higher initial ratings are warranted for the Veteran's left and right lower extremity radiculopathy. If any benefit sought remains denied the Veteran should be issued a supplemental statement of the case (SSOC) that addresses actions taken since the issuance of the last SSOC and given the opportunity to respond. The case should then be returned to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs