Citation Nr: 1454752 
Decision Date: 12/11/14 Archive Date: 12/17/14

DOCKET NO. 04-07 543A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Togus, Maine


THE ISSUE

Entitlement to a total rating based on individual unemployability due to service connected disabilities (TDIU). 


REPRESENTATION

Veteran represented by: Keith D. Snyder, Attorney at Law


ATTORNEY FOR THE BOARD

J. L. Prichard, Counsel


INTRODUCTION

The Veteran had active military service from April 1948 to April 1952. 

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from July 2002 and May 2003 rating decisions of the Togus, Maine, Department of Veterans Affairs (VA) Regional Office (RO). 

The July 2002 rating decision granted service connection for PTSD and assigned a 30 percent rating, effective on January 20, 1993. The May 2003 rating decision assigned a 100 percent rating for PTSD, effective October 7, 2002. 

In a February 2006 decision, the Board denied an effective date prior to October 7, 2002 for the assignment of a 100 percent rating for PTSD, but remanded the issue of retroactive compensation benefits less than 100 percent for PTSD for further development. 

In a July 2007 decision, the Board denied an initial disability rating in excess of 30 percent for the service-connected PTSD prior to October 7, 2002. 

The Veteran appealed this decision to the U. S. Court of Appeals for Veterans Claims (Court). 

In an August 2010 Memorandum Decision, the Court reversed the Board's finding that the Veteran did not file a timely Notice of Disagreement (NOD) with regard to the July 2002 rating decision that initially granted service connection for PTSD and remanded the claims for an initial disability rating higher than 30 percent for the service-connected PTSD from January 1993 to October 2002 and for an effective date earlier than October 7, 2002 for the assignment of the 100 percent rating for the service-connected PTSD to the Board for readjudication consistent with the decision. 

In July 2011, the Board remanded these matters to the RO for additional development, and the case was returned to the Board for readjudication. 

A November 2012 Board decision granted the Veteran a 50 percent disability rating for his service-connected PTSD, effective on July 27, 1993 and a 70 percent disability rating, effective on November 7, 1996. 

The Board also denied entitlement to an effective date prior to October 7, 2002 for the assignment of a 100 percent disability rating for the service-connected PTSD.

The Veteran subsequently appealed the November 2012 decision to the Court, and in a December 2013 Order, the Court vacated only that part of the decision which declined to refer the Veteran's claim for a potential TDIU, and remanded the matter to the Board for development consistent with the parties' Joint Motion for Partial Remand (Joint Motion).

The Board remanded the claim for additional development consistent with the Joint Motion in March 2014. The development has been completed, and the claim has been returned to the Board for further appeal. 

At this juncture, the Board observes that the ratings assigned to the Veteran's PTSD by the November 2012 Board decision were undisturbed by the Court, and will not be revisited by this decision. 

A review of the Virtual VA and VBMS paperless claims processing systems reveals additional medical evidence. However, it is not pertinent to the present appeal.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. From January 20, 1993 to November 6, 1996, the Veteran's service connected disabilities did not meet the percentage requirements for TDIU and VA's Director of Compensation and Pension (Director) has determined that the Veteran's disabilities did not warrant TDIU on an extraschedular basis during this period. 

2. The factual foundation relied upon by the Director was complete and accurate.

3. The Veteran's service connected disabilities precluded gainful employment from November 7, 1996 to October 6, 2002. 

4. The Veteran's service connected PTSD was evaluated as 100 percent disabling effective from October 7, 2002; and there is no evidence that the Veteran's other service connected disabilities (tinnitus, bilateral hearing loss, and appendectomy scar) individually or in combination render him unable to obtain or maintain gainful unemployment. 


CONCLUSION OF LAW

The criteria for TDIU were met from November 7, 1996 to October 6, 2002; the criteria for TDIU were not met during any other period. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VCAA

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2009); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a) (West 2002); C.F.R. § 3.159(b)(1) (2014). Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In this case, the Veteran was provided with complete VCAA notification in an October 2011 letter and an April 2014 letter. These letters contain all the information required by Pelegrini v. Principi, 18 Vet. App. 112 (2004) and Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Although it was not provided to the Veteran until after the initial consideration of his claim, it was received prior to consideration of the TDIU component of the claim. Furthermore, any delay in the receipt of notice regarding the claim for TDIU is harmless, as the claim has been considered by the RO since receipt of the April 2014 letter. Mayfield v. Nicholson, 444 F.3d 1328 (2006). The duty to notify has been met. 

The Board also finds that the duty to assist has been met. The Veteran's VA treatment records have been obtained, as have any private records identified by the Veteran. As instructed in the Board's March 2014, remand the Veteran was sent a VCAA notice letter; his claims folder was forwarded to a VA examiner in order to obtain an opinion regarding the Veteran's employability during the period in question. Furthermore, it was forwarded to the Director of VA Compensation Service for extraschedular consideration. The Veteran has declined his right to a hearing. There is no indication that there is any relevant evidence outstanding in this claim, and the Board will proceed with consideration of the Veteran's appeal.

TDIU

The Veteran contends that his service connected disabilities combined to render him unemployable prior to the assignment of a 100 percent rating for his service connected PTSD effective from October 7, 2002. 

The case arises from the Veteran's January 1993 claim for service connection for PTSD, and his appeal of the initial ratings assigned by the July 2002 rating decision that granted the claim for service connection. His PTSD is evaluated as 30 percent disabling from January 20, 1993; 50 percent disabling from July 27, 1993, 70 percent disabling from November 7, 1996, and 100 percent disabling from October 7, 2002. 

TDIU is an element of the initial rating for PTSD. Rice v. Shinseki, 22 Vet. App. 447 (2009).

As noted by the December 2013 Joint Motion and the March 2014 remand, there is evidence dating from the early 1990s that the Veteran was unemployed and potentially unemployable due to psychiatric disabilities. Therefore, the Board finds that a claim for TDIU has been raised. 

Entitlement to a TDIU requires the presence of impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. Consideration may be given to the Veteran's level of education, special training and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by nonservice-connected disabilities. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2014). In reaching such a determination, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

A TDIU may be assigned where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. The existence or degree of nonservice-connected disabilities or previous unemployability status will be disregarded. Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a). 

VA policy; however, is to assign TDIU in all cases where service connected disabilities render a Veteran unemployable. Accordingly, rating boards are instructed to refer to the Director for extraschedular consideration, all cases where a veteran is unemployable by reasons of service connected disabilities, but fails to meet the percentage requirements for TDIU. 38 C.F.R. § 4.16(b).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b). 

TDIU from January 20, 1993 to November 6, 1996

The Veteran was awarded a non-service connected pension due to unemployability in April 1977. Service connection was not in effect for any disability at that time. 

The first disability for which service connection was established is a residual appendectomy scar, effective from August 1989. Entitlement to service connection for tinnitus and bilateral hearing loss has been in effect from June 1992. 

As of January 20, 1993, the Veteran was service connected for PTSD, evaluated as 30 percent disabling; tinnitus, evaluated as 10 percent disabling; the residuals of an appendectomy scar, evaluated as zero percent disabling; and bilateral hearing loss, evaluated as zero percent disabling. He had a combined rating of 40 percent. 

The rating for the Veteran's PTSD was increased to 50 percent from July 27, 1993. The ratings for his remaining disabilities remained unchanged. This resulted in a combined rating of 60 percent from July 27, 1993, which remained unchanged until November 7, 1996. 

Thus, it is apparent that the Veteran did not meet the scheduler criteria for TDIU consideration during the pendency of his claim from January 20, 1993 to November 6, 1993. He did not have the required combined rating of 70 percent or a single disability rated 60 percent disabling at any point prior to November 7, 1996. 

The March 2014 remand instructed that the RO/AMC refer the matter of entitlement to TDIU on an extraschedular basis for appropriate consideration. In August 2014, the agency of original jurisdiction referred the question of the Veteran's entitlement to TDIU prior to October 2002 to the Director for extraschedular consideration.

In September 2014, the Director found that the Veteran was not entitled to TDIU on an extraschedular basis prior to October 7, 2002. In summary, the Director found that none of the Veteran's service connected disabilities precluded him from obtaining and retaining all forms of substantially gainful employment, and there were no marked factors that rendered the application of the regular rating scheduler standards impractical during this period. 

VA's General Counsel has taken the position that the Board may only review a decision of the Director of Compensation Service for the accuracy of the factual predicate upon which the decision is based. Wages v. McDonald, Vet. App. No. 13-2694. The Board is bound in its decisions by the instructions of the Secretary. 38 U.S.C.A. § 7104(c) (West 2002).

In the instant case, the Director accurately described the Veteran's education, work history, and selective medical records for the appropriate period, and noted that the majority of medical opinions and evidence show that the Veteran was not precluded from employment prior to 2002. He also accurately described a June 2014 opinion obtained pursuant to the Board's remand. The Director also reported consideration of the favorable evidence cited in the Joint Motion following the Board's November 2012 decision. Thus, the Director's decision was based on accurate facts and the Board may not disturb the determination that Veteran was not entitled to TDIU during the period prior to November 7, 1996.

A March 1991 hospital report shows that the Veteran was discharged following a psychiatric admission at a VA facility. The discharge diagnosis was depression, as well as hypertension and osteoarthritis of the right knee. Under the heading "employability", it says "He is disabled; NOT EMPLOYABLE". The examiner did not specify the disability or disabilities that prevented the Veteran from working. 

The record shows that the Veteran participated in VA occupational therapy from 1991 to 1992, when he was discharged from the program in September 1992 for non-attendance. He underwent surgery for a non-service connected back disability in 1992, after which he was again recommended for occupational therapy. On this occasion, his recent discharge from the program was noted and he was not approved. 

A September 1992 records from a private neurologist notes that he had recently evaluated the Veteran for a back disability. The Veteran was said to be disabled and unemployed. October 1992 records from the same doctor show that he had performed back surgery on the Veteran. The Veteran's service connected disabilities were not mentioned in these records. 

In January 1993, a VA treatment record notes that the Veteran was angry that he had not been accepted for the Day Treatment program as he was too functional. 

A March 1993 VA examination states the Veteran had attended college for two and a half years, after which he had worked as a nurse in various nursing positions for 30 years. He had last worked four years ago doing custodial work, which he had to quit due to a heart attack. 

An April 1993 VA hospital note shows that he was released after treatment for a nonservice-connected disability. Under the heading "employability", it was stated the Veteran could resume his prehospitalization activities without restrictions, but further noted he was retired from gainful employment. 

After a May 1993 VA hospitalization for his nonservice-connected bipolar disorder, the Veteran was not felt to be employable at his discharge. Neither PTSD nor any other service connected disability was included in the diagnoses at discharge. 

There were no additional opinions regarding employability for the remainder of this period. However, an opinion regarding the Veteran's employability was obtained from a VA examiner in June 2014. After a review of the Veteran's medical records, the examiner opined that it was less likely than not that the Veteran's service connected diagnoses of PTSD, tinnitus, hearing loss and appendectomy scar would have precluded him from obtaining or retaining all forms of substantially gainful employment consistent with his education and occupational background for the period prior to October 7, 2002. The rationale was that the Veteran could do many sedentary jobs, and that the disabilities did not prevent him from engaging in sedentary activities or the use of his hands. 

The record shows that the Veteran retired from work in 1989 following a heart attack. He is not service connected for a heart disability. 

The Veteran underwent occupational therapy in 1992 and the April 1993 hospital note suggest that the Veteran was capable of being employed. The May 1993 hospital note suggests otherwise. Finally, the June 2014 VA examiner reviewed the record and opined that the Veteran's service connected disabilities did not render him unemployable prior to October 7, 2002, as he remained capable of doing many sedentary jobs. 

Effective from November 7, 1996, the rating for the Veteran's service connected PTSD was increased to 70 percent. Thus, the Veteran met the scheduler criteria for consideration for TDIU as of this date, and the Director's opinion as to Veteran's employability is subject to de novo review. 

VA hospital records from April 1997 show that the Veteran was admitted for treatment of a depressive disorder and an anxiety disorder. At discharge, the Veteran was said to be unemployable. 

An October 1997 VA psychology rating noted that the Veteran had displayed a significant change in his condition in September 1997. Following testing and examination, the impressions were that the Veteran appeared to have had a sudden change in his cognitive functioning which was unlikely to be attributable to his psychiatric condition. The cause of this was not known, but possible causes were an inflammatory process such as meningitis, or a gradual onset of dementia that was hastened by a relatively small event such as a transient ischemic event. Further examination was required to rule out reversible causes of dementia. 

A May 2002 VA examination notes the history of the Veteran's breakdown in the early 90s, as well as a history of some type of cognitive event about eight years previously. He met the criteria for PTSD. The Veteran also had a history of a bipolar disorder and mood difficulties which might be somewhat intertwined with his PTSD, but at the present time the PTSD seemed to be more primary. While he had shown signs in the past of an organic brain disorder, he appeared to have improved significantly since he was evaluated in 1997, and while he did show some signs of cognitive changes he did not appear significantly demented. The diagnosis was PTSD, and the Veteran had moderate impairment of social and occupational functioning. 

The June 2014 VA medical opinion also pertains to the period from November 1996 to October 2002. The examiner opined that it was less likely than not that the Veteran's service connected diagnoses of PTSD, tinnitus, hearing loss and appendectomy scar would have precluded him from obtaining or retaining all forms of substantially gainful employment consistent with his education and occupational background for the period prior to October 7, 2002. She said he remained able to perform sedentary jobs and to use his hands. 

There are conflicting opinions about the Veteran's employability between November 1996 and October 6, 2002. The May 2002 examination report and June 2014 opinion weigh against TDIU. Weighing in favor of a finding of entitlement to TDIU are the findings on the multiple psychiatric hospitalizations during this period, when it was opined that he was not employable due to psychiatric disability and findings during VA outpatient treatment. These records show that at times he was experiencing hallucinations, was unkempt and tearful. In addition, his employment experience has mostly been as a custodian and there is no indication that he has education or experience in sedentary employment.

Although many of the treatment record during this period do not specifically mention PTSD, but rather refer to other psychiatric diagnoses; the symptoms attributable to PTSD have not been distinguished from the other diagnoses. To the contrary, the May 2002, examination provides evidence that all of the diagnoses are related. The evidence is in at least equipoise. Resolving reasonable doubt in the Veteran's favor, TDIU is granted for the period from November 7, 1996 to October 6, 2002.

TDIU from October 7, 2002

In Bradley v. Peake, 22 Vet. App. 280 (2008), the Court held that although no additional disability compensation may be paid when a total schedular disability rating is already in effect, a separate award of a TDIU predicated on a single disability may form the basis for an award of special monthly compensation (SMC).

Bradley essentially requires that VA consider a TDIU claim despite the existence of a schedular total rating if VA finds the separate disability supports a TDIU independent of the disability that is rated 100 percent. See Bradley, 22 Vet. App. 280, 294 (2008).

Therefore, the Board must consider whether the Veteran's service connected disabilities other than PTSD support entitlement to TDIU. 

The Veteran's service connected disabilities other than his PTSD remain tinnitus, evaluated as 10 percent disabling; the residuals of an appendectomy scar, evaluated as zero percent disabling, and bilateral hearing loss, evaluated as zero percent disabling; this would result in a combined rating of 10 percent which fails to meet the requirement for scheduler consideration of TDIU. 

The Veteran does not contend that the three service connected disabilities, other than PTSD, would render him unemployable, and there is no competent medical evidence to support such a finding. The preponderance of the evidence is against this portion of the Veteran's claim. 


ORDER

Entitlement to a TDIU is granted from November 7, 1996 to October 6, 2002.

Entitlement to a TDIU for any other period is denied. 



____________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs