Citation Nr: 1749201 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 08-18 082 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to a disability rating in excess of 30 percent for posttraumatic stress disorder (PTSD) prior to September 7, 2016.

2. Entitlement to a disability rating in excess of 50 percent for PTSD since September 7, 2016.


REPRESENTATION

Veteran represented by: John S. Berry, Esq.


ATTORNEY FOR THE BOARD

J. Smith, Counsel



INTRODUCTION

The Veteran served on active duty from May 1965 to September 1969.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2016 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska.

The Veteran's claims file contains a lengthy procedural history consisting of multiple Board decisions and decisions of the United States Court of Appeals for Veterans Claims (Court). All matters contained in these prior adjudications are now resolved, and the above-captioned claim remains the only matter pending on appeal. 

In July 2016, the Board remanded the above claim for further development. The Board also remanded a claim for service connection for a gastrointestinal disability. Subsequently, in an October 2016 rating decision, the RO awarded service connection for a gastrointestinal disability. As such, the claim is no longer on appeal and will not be addressed below. See generally Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997); Barrera v. Gober, 122 F.3d 1030 (Fed. Cir. 1997).

Also in the October 2016 rating decision, the RO granted a higher, 50 percent disability rating for the Veteran's PTSD, effective September 7, 2016. As this was not a full grant of the benefit sought on appeal, and the Veteran did not indicate that he agreed with the increased rating, his claim remains on appeal and has been characterized to reflect the staged rating assigned. See AB v. Brown, 6 Vet. App. 35 (1993). 

In October 2016, the Veteran's attorney disagreed with the effective date assigned by the October 2016 rating decision for the 50 percent rating. However, remand for the issuance of a statement of the case is not necessary. Manlincon v. West, 12 Vet. App. 238 (1999). As the ratings under review are staged ratings, the matter of the Veteran's entitlement to a rating higher than 30 percent prior to September 7, 2016 will be adjudicated below as part of the increased rating claim already on appeal. Hart v. Mansfield, 21 Vet. App. 505 (2007). 
Finally, as a matter of clarification, the Veteran's attorney has submitted several letters inquiring about the status of an August 2015 VA Form 21-526b, in which he sought service connection for Agent Orange exposure. However, the Board will not refer this claim to the RO for development. The RO, in a September 2015 letter, already responded and advised the Veteran and his attorney that further action would not be taken as exposure is not a condition that can be service-connected. 


FINDINGS OF FACT

1. Prior to September 7, 2016, the Veteran's PTSD was not manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory; impaired judgment; or impaired abstract thinking. 

2. Since September 7, 2016, the Veteran's PTSD has not been manifested by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control; spatial disorientation; neglect of personal appearance and hygiene; or an inability to establish and maintain effective relationships.


CONCLUSIONS OF LAW

1. Prior to September 7, 2016, the criteria for a rating in excess of 30 percent for PTSD were not met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411 (2016).

2. Since September 7, 2016, the criteria for a rating in excess of 50 percent for PTSD have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In reaching the decisions below, the Board considered the Veteran's claims and decided entitlement based on the evidence. Neither the Veteran nor his representative have raised any other issues, nor have any other issues been reasonably raised by the record, with respect to his claims. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent, as far as can practicably be determined, the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disability specified is considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. However, the evaluation of the same disability under various diagnoses, known as pyramiding, is to be avoided. 38 C.F.R. § 4.14.

Staged ratings are appropriate for an increased rating claim if the factual findings show distinct time periods where the service-connected disability exhibited symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). Here, as described below, further staged ratings are not warranted for the Veteran's PTSD.

The Board has reviewed all of the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the United States Court of Appeals for the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the analysis below will focus specifically on what the evidence shows, or fails to show, as to the claims.

The Veteran was awarded service connection for PTSD in a June 2011 rating decision and assigned a 10 percent rating, effective February 5, 2007. 

In August 2012, the Board awarded a higher rating of 50 percent from February 5, 2007, and a higher rating of 30 percent from March 14, 2011. These awards were implemented by the RO in a September 2012 rating decision.

In November 2015, the Veteran filed a claim for a higher rating. In the February 2016 rating decision on appeal, the 30 percent rating was continued.

In July 2016, the Board remanded the claim for further development.

In October 2016, the RO awarded a higher rating of 50 percent, effective September 7, 2016.

Once a veteran has been diagnosed with a service-connected psychiatric disability, VA reviews his medical history to determine how significantly the disorder has disrupted the veteran's social and occupational functioning. The level of disability is rated according to a General Rating Formula for Mental Disorders, codified at 38 C.F.R. § 4.130 ("General Rating Formula"), which provides for ratings of zero, 10, 30, 50, 70, or 100 percent. VA compensates Veterans beginning at 10 percent disability, and compensation increases at each level. 

Pursuant to 38 C.F.R. § 4.130, a 30 percent rating is warranted for occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

When determining the appropriate disability evaluation to assign, the Board's primary consideration is the veteran's symptoms, but it must also make findings as to how those symptoms impact the veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442; see also Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be "due to" those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

In an April 2014 treatment record, the Veteran reported anxiety and anger. He denied suicidal thoughts, homicidal thoughts, or psychotic symptoms. The provider noted that that grooming and hygiene were fair, mood was neutral, and affect was appropriate. The provider found no abnormalities in speech, thought processes, thought content, or insight. Sensorium was clear. 

In an April 2015 VA treatment record, the Veteran reported depression with past suicidal ideation. He denied current suicidal ideation, homicidal ideation, or psychosis. The provider found that grooming and hygiene were good, mood was neutral, and affect was congruent. The provider found no abnormalities in speech, thought processes, thought content, or insight. 
In a May 2015 treatment record, the Veteran reported daily, bothersome memories of his trauma, and difficulty sleeping. He also had emotional numbing, avoidance of reminders, and hyperarousal. He felt as though his symptoms were increasing and becoming difficult to endure. He reported having more than 150 jobs post-service, and one alcohol-related arrest. He had been married to his wife for many years but they had periods of separation. Their grandson lived with them and a granddaughter stayed with them occasionally. The record did not contain a mental status assessment and the provider did not render findings.

In a July 2015 treatment record, the Veteran reported difficulty with physical affection and social unease and anxiety. The provider noted that grooming and hygiene were fair, mood was neutral, and affect was appropriate. The provider found no abnormalities in speech, thought processes, thought content, or insight. There was no homicidal ideation. 

In an August 2015 treatment record, the Veteran reported a stable mood and decreased symptoms. The provider noted that that grooming and hygiene were fair, mood was neutral, and affect was appropriate. The provider found no abnormalities in speech, thought processes, thought content, or insight. There was no homicidal ideation. The provider noted that the Veteran's disorder was nearly in complete remission.

On VA examination in December 2015, the Veteran reported having been married to his wife since 1978, but that they lived separately. His wife attended the examination with him. They had lost a son to a motorcycle accident, but had a daughter, 8 grandchildren, and 2 great-grandchildren. The Veteran had contact with his children and grandchildren, and one grandson lived with him. He reported no social activities and that he wasn't working.

On examination, he was oriented in all spheres. Attention, concentration, judgment, and insight were intact. Memory for remote, recent, and immediate events were intact. In discussing the diagnostic criteria for PTSD, the Veteran was found to have "intrusion symptoms," persistent avoidance of stimuli associated with the trauma, negative alterations in cognitions and mood associated with the trauma, and marked alterations in arousal and reactivity associated with the trauma. As further contemplated by the diagnostic criteria for PTSD, the symptoms caused clinically significant distress or impairment in social, occupational, or other areas of functioning. 

The examiner additionally found that the Veteran's PTSD symptoms consisted of a depressed mood, anxiety, and chronic sleep impairment. To the extent the Veteran reported any other symptoms, they did not rise to the level of chronicity required for diagnosis, were transient, or were not objectively identified on mental status examination. The Veteran was capable of managing his financial affairs. The examiner opined the PTSD caused occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), the "severity statement" corresponding to a 30 percent rating.

On VA examination in September 2016, the Veteran reported having been married for 38 years. He lived in the house with his wife. His social support included his wife, daughter, uncle, and sister. His hobbies included football and watching television. He reported daily anger and nightly nightmares. He reported social withdrawal. He did not have legal problems.

In discussing the diagnostic criteria for PTSD, the Veteran was found to have "intrusion symptoms," persistent avoidance of stimuli associated with the trauma, negative alterations in cognitions and mood associated with the trauma, and marked alterations in arousal and reactivity associated with the trauma. As further contemplated by the diagnostic criteria for PTSD, the symptoms caused clinically significant distress or impairment in social, occupational, or other areas of functioning. 

The examiner additionally found that the Veteran's PTSD symptoms consisted of a depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, and difficulty in establishing and maintaining effective work and social relationships. The examiner stated that to the extent the Veteran reported any other symptoms, they did not rise to the level of chronicity required for diagnosis, were transient, or were not objectively identified on mental status examination. 

The Veteran's hygiene and grooming were good. There were no speech abnormalities. He was fully oriented and concentration and attention were good. Judgment and insight were good. His mood was irritable and his affect was slightly depressed. He was capable of managing finances. The examiner stated the Veteran's PTSD caused overall impairment in the moderate to severe range. The condition impacted employment to the extent that the Veteran quit past jobs due to irritability and had difficulty with trust and social connection. The examiner opined the PTSD caused occupational and social impairment reduced reliability and productivity, the "severity statement" corresponding to a 50 percent rating.

In considering the evidence under the laws and regulations as set forth above, the Board finds the preponderance of the evidence is against the claims for higher ratings. 

For the period of the appeal prior to September 7, 2016, the December 2015 VA examiner specifically selected the severity statement corresponding to a 30 percent rating at the exclusion of the severity statements corresponding to higher ratings. Moreover, the symptoms consistently attributable to the Veteran's PTSD, including a depressed mood, anxiety, and sleep impairment fall squarely under the requirements for a 30 percent rating.

Additionally, much of the criteria contemplated by a 50 percent rating was not shown prior to September 7, 2016. The evidence did not show a flattened affect, circumstantial, circumlocutory, or stereotyped speech, panic attacks more than once a week, difficulty in understanding complex commands, impairment of short and long-term memory, impaired judgment, or impaired abstract thinking. 

The record prior to September 7, 2016 shows periods of separation from his wife, the Veteran's report of having no social activities, and an alcohol-related arrest from an unknown date, indicating disturbances of motivation and mood and difficulty in establishing and maintaining effective social relationships. However, in light of the general disability picture for this time period and the December 2015 VA examiner's overall assessment of the condition's severity, the Board does not find that these symptoms alone warrant a rating in excess of 30 percent. The Board thus finds the Veteran's overall symptomatology attributable to his PTSD most closely approximates the level of severity contemplated by a 30 percent rating prior to September 7, 2016. 

As for the period of the appeal since September 7, 2016, the September 2016 VA examiner selected the severity statement pertaining to a 50 percent, rather than 70 percent, rating, in characterizing the overall severity of the Veteran's PTSD. The identified symptoms, consisting of a depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, and difficulty in establishing and maintaining effective work and social relationships, fall squarely under the requirements for a 30 percent rating.

Moreover, the record does not indicate most of symptoms contemplated by a 70 percent rating, including suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; or an inability to establish and maintain effective relationships. 

The record for this time period shows difficulty with social connections and trusting others, however, this does not amount to an inability to establish and maintain effective relationships, particularly in light of the Veteran's long marriage and relationships with other family members. His anger and irritability support difficulty in adapting to stressful circumstances, but in light of the general disability picture for this time period and the September 2016 VA examiner's overall assessment of the condition's severity, the Board does not find that this alone warrants a rating in excess of 50 percent. The Board thus finds the Veteran's overall symptomatology attributable to his PTSD most closely approximates the level of severity contemplated by a 50 percent rating since September 7, 2016. 
The VA examination reports are adequate for adjudication. The examiners examined the Veteran and pertinent records, considered his history, and set forth objective findings necessary for adjudication. The Board has further considered the admissible and believable assertions of the Veteran. See, e.g., Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, the lay statements are not considered more persuasive than the objective medical findings which, as indicated below, do not support higher ratings than those already assigned. 

Finally, the Board has considered whether an inferred claim for a total disability based upon individual unemployability has been raised pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009). Basically, a TDIU award permits for the assignment of a total rating even when an individual service-connected disability or disabilities are rated as less than total. 

Here, the Veteran was awarded a TDIU from January 7, 2008 to March 31, 2009. Thereafter, he was awarded a combined total schedular rating. However, this total rating does not render moot consideration of a TDIU during the appeal period. In Bradley v. Peake, 22 Vet. App. 280 (2008) the Court held that, although no additional disability compensation may be paid when a total schedular disability evaluation is already in effect, a separate award of a TDIU rating predicated on a single disability (perhaps not ratable at the schedular 100 percent level) when considered together with another disability separately rated at 60 percent or more might warrant payment of special monthly compensation (SMC) under 38 U.S.C.A. § 1114 (s). See also Buie v. Shinseki, 24 Vet. App. 242, 250 (2011). SMC at the "s" rate has not been awarded to the Veteran, rather, he is in receipt of SMC at the "k" rate. As it is possible that the Veteran could receive an award of a TDIU rating predicated on his PTSD, and because he has other service-connected disabilities involving distinct anatomical segments or bodily systems independently rated at 60 percent or higher so as to meet the criteria for SMC at the "s" rate, the matter is not moot.

However, in the course of this appeal the Veteran has not alleged, including to VA examiners or any provider, that he is precluded from attaining or maintaining gainful employment due his PTSD. While VA examiners noted that his psychiatric symptoms would have an impact on his work, no examiner or treatment provider indicated that his PTSD precludes him from securing or following gainful employment. Indeed, both examiners found there was no total occupational impairment. As such, Rice is inapplicable.

For all the foregoing reasons, the Board finds no basis for the assignment of a rating in excess of 30 percent prior to September 7, 2016, or in excess of 50 percent since that date for the Veteran's PTSD. In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against ratings higher than those already assigned, the doctrine is not for application. 


ORDER

A disability rating in excess of 30 percent for PTSD prior to September 7, 2016 is denied.

A disability rating in excess of 50 percent for PTSD since September 7, 2016 is denied.



____________________________________________
Donnie R. Hachey
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs