﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/30/19

DOCKET NO. 190328-6985
DATE: October 31, 2019

ORDER

An increased 100 percent rating for an acquired psychiatric disorder (diagnosed as panic disorder with agoraphobia, insomnia, posttraumatic stress disorder (PTSD), alcohol abuse, and cocaine abuse) is granted, effective August 14, 2017.

The issue of entitlement to a total disability based on individual unemployability (TDIU) due to acquired psychiatric disorder, alcohol abuse, and cocaine abuse is dismissed as moot.

FINDINGS OF FACT

1. Prior to January 16, 2019, the Veteran’s acquired psychiatric disorder was productive of total social and occupational impairment.

2. The award of a 100 percent rating for acquired psychiatric disorder for the entire appeal period has rendered the issue of entitlement to a TDIU moot.

CONCLUSIONS OF LAW

1. Prior to January 16, 2019, the criteria for an increased evaluation of 100 percent for an acquired psychiatric disorder were met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.130, Diagnostic Code 9412.

2. The grant of a 100 percent rating for the entire appeal period renders the appeal for a TDIU moot. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from February 2004 to February 2009. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a March 2019 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). The VA received the Veteran’s increased rating claim for acquired psychiatric disorder on August 14, 2017, and he has pursued it continuously since that time. 

The Veteran timely appealed the March 2019 rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

For an increased rating claim, the Board evaluates the severity of the Veteran’s disability from the one-year time period before the Veteran filed his increased-rating claim until VA makes a final decision. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010). “The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date.” 38 U.S.C. § 5110 (b)(3). The Veteran is in receipt of a 100 percent schedular rating from January 16, 2019. Accordingly, the scope of review for this appeal is limited from the August 14, 2017, but not earlier than August 14, 2016, until January 16, 2019. 

The issue of entitlement to a TDIU due to service-connected acquired psychiatric disorder has also been raised by the Veteran during the course of this appeal. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009) (holding that, in the context of an initial adjudication of a claim of entitlement to service connection or in the context of a claim for an increase “a request for TDIU, whether expressly raised by a veteran or reasonably raised by the record, is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability”). This issue has been added to the appeal. However, the Veteran has been in receipt of a 100 percent schedular rating for his psychiatric disorder since January 16, 2019. As such, the issue of entitlement to a TDIU is moot from January 16, 2019. See Buie v. Shinseki, 24 Vet. App. 242, 250-51 (2011); Bradley v. Peake, 22 Vet. App. 280, 294 (2008); DVA Sum. Op. Gen. Counsel Prec., 75 Fed. Reg. 11229-04 (Mar. 10, 2010) (withdrawing VAOPGCPREC 6-99, 64 Fed. Reg. 52375 (1999)). Thus, the issue currently on appeal is entitlement to a rating higher than 70 percent, to include a TDIU, due to an acquired psychiatric disorder prior to January 16, 2019.

Increased Rating for an Acquired Psychiatric Disorder

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. 

Disability evaluations are determined by evaluating the extent to which a Veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Rating Schedule. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7.

While a Veteran’s entire history is reviewed when assigning a disability evaluation, 38 C.F.R. § 4.1, where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). In determining the present level of a disability for any increased evaluation claim, the Board must consider the application of staged ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Francisco, 7 Vet. App. at 58; Hart, 21 Vet. App. at 505.

Throughout the period under review, the Veteran’s PTSD is rated as 70 percent disabling. A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. See 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions and the Veteran’s capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on social and occupational impairment rather than solely on the examiner’s assessment of the level of disability at the moment of examination. 38 C.F.R. § 4.126(a). When evaluating the level of disability from a mental disorder the rating agency will consider the level of social impairment but shall not assign an evaluation solely based on social impairment. 38 C.F.R. § 4.126(b). 

The Court has held that the use of the phrase “such symptoms as,” followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. In particular, use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant’s social and work situation. Mauerhan v. Principi, 16 Vet. App. 436 (2002). “All nonzero disability levels [in § 4.130] are also associated with objectively observable symptomatology,” and the plain language of the regulation makes it clear that “the veteran’s impairment must be ‘due to’ those symptoms . . . a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration.” Kennedy v. Shulkin, No. 16-3645, 2018 U.S. App. Vet. Claims LEXIS 357, at *17 (quoting Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013)).

The Board observes that during the appeal period, the Veteran has been diagnosed with PTSD, panic disorder, agoraphobia, alcohol use disorder, and cocaine use disorder. The February 2019 VA examiner opined that the Veteran’s psychological symptoms were “additive and synergistic. Any attempt to differentiate what portion of the indicated level of the occupational and social impairment is attributable to each diagnosis would be arbitrary and speculative.” Thus, the Board will consider all of his psychiatric symptoms as part of his service-connected disorder for rating purposes. See Mittleider v. West, 11 Vet. App. 181, 182 (1998).

After review of the evidence of record, the Board finds that the Veteran’s acquired psychiatric disorder symptoms during the appeal period most closely approximated total social and occupational impairment. 

Specifically, the evidence shows that that the Veteran’s agoraphobia symptoms impaired his ability to maintain social relationships. A September 2017 VA examiner observed symptoms of anxiety and hopelessness. The VA examination report documented the Veteran showing an inability to establish and maintain effective relationships. An April 2018 VA examination report stated that the acquired psychiatric disability was manifested by symptoms of anxiety, panic attacks more than once a week, chronic sleep impairment, flattened affect, and disturbances in motivation and mood. The Veteran explained that maintaining social relationships is “very hard” because he has difficulty leaving his home. The Veteran generally stated that his disability prevented him from maintaining any social relationships: “[C]an’t have a relationship.” 

Additionally, the Veteran’s symptoms of memory loss, agoraphobia, anxiety, suicidal ideations, or other psychiatric manifestations resulted in occupational impairment. The September 2017 examiner evaluated the Veteran to have impaired judgment and found evidence of mild memory loss. Also, the April 2018 VA examination report stated that although the Veteran is not “physically violent acting out,” the Veteran struggles to keep the “kill switch” turned off. The collective impact of anxiety, memory loss, and violent tendencies would prevent him from meeting the demands of a typical work setting. 

The Board observes that during the claim period the severity of suicidal ideations worsened, documenting first incidences of self-harm and more persistent suicidal thoughts. A September 2017 VA progress note documented that the Veteran denies having active suicidal ideations, but “admits to occasional, random thoughts which pop into his mind . . . .” However, more recently, the Veteran exhibited behavior that presented a greater danger to himself. A May 2018 VA progress note stated that the Veteran “has been cutting on his left forearm, none needed sutures however one cut is fairly long. Those are about 4-5 day old cuts. He denies hx of cutting. Part of the increase of symptoms and the cutting is due to him having anxiety about the disability rating, other parts are due to increasing flashbacks with the recent deaths.” On May 22, 2018, the Veteran called a VA mental health hotline. According to the VA phone call notes, the Veteran reported receiving the disability letter denying an increase of benefits. The Veteran stated that “[i]t says that I can work, I can’t work or hold down a job.” The progress note also recorded the Veteran saying, “I cannot wait another 4 months, I can’t live like this . . . I’m am ready to stick a . . . knife in my arm.” According to the listener, the Veteran denied being in danger to self or others. VA progress notes indicate that the Veteran was elevated to “high risk for suicide review” in July 2018 and reduced to “intermediate risk” in November 2018. 

The record does not demonstrate that as a consequence of his disability, the Veteran was unable to maintain employment during the appeal period; rather, the record reflects that the Veteran’s income was unreliable, and his employment was intermittent during the claim period. According to the Veteran, he started working at Tupelo Grill in March 2016. See November 2018 Veterans Application for Increased Compensation Based on Unemployability. Tupelo Grill variously reported the Veteran having begun working on April 25, 2017 and May 16, 2018. See February 2019 VA Form 21-4192; See March 2019 VA Form 21-4192. As of December 2017, the Veteran was washing dishes at a restaurant for meals. In January 2018, the Veteran reported to a VA psychiatrist that he “lost his job as a chef in a restaurant in Whitefish – due to his PTSD related anxiety.” Also, a February 2018 VA treatment progress note documented the Veteran reporting that he lost employment due to his inability to leave his home. The Tupelo Grill reported in February 2019 that the Veteran earned at least $22,899.00 within the last twelve months and remained employed. See February 2019 VA Form 21-4192. 

Although evidence of record documents that the Veteran is currently employed and earning an income above the poverty threshold for a family unit of one, the Board finds that the Veteran’s intermittent-at-best employment status is demonstrative of his inability to maintain gainful employment. Based upon evidence received from the Veteran and his employer, it appears to the Board that the Veteran was able to maintain his job solely as a result of the nature of his employment in what is best characterized as a protected work environment. According to a September 2017 mental health phone call, the Veteran characterized his employer as “very patriotic.” He stated that due to his anxiety he called his employer “20 minutes before my shift, when I should have been fired... He’s giving me a handout.” In November 2018, the Veteran reported that he is “currently working with an employer temporarily sympathic to my plight.” In the April 2019 employment form, the Veteran’s employer explained that he is “working with Employee so he can function.” The employer adjusted the Veteran’s schedule to accommodate the Veteran and offer the Veteran time to attend VA appointments. Significantly, the Board finds that the Veteran’s symptoms, including his ability to maintain employment, were not better prior to January 19, 2019, the date the RO assigned an increased 100 percent rating, than they have been since that date. 

Based upon the foregoing, the Board finds that throughout the entirety of the appeal period, the Veteran's symptoms, specifically including isolation, hypervigilance, memory impairment, chronic passive suicidal ideations, and self-harm have most nearly approximated the type of impairment described in the 100 percent rating criteria. In so finding, the Board considered the record as a whole and finds the Veteran’s consistent reports of symptoms to be highly probative. Moreover, the VA treatment records are highly probative as documenting the Veteran’s reports of employment and suicidal ideations. Accordingly, the Veteran’s increased rating claim is granted.

Lastly, evidence does not reflect worsening of the Veteran’s disability in the year preceding the filing of his increased rating claim. 38 C.F.R. § 3.400(o)(2). As such, an increased rating of 100 percent is warranted as of August 14, 2017, but no earlier.

TDIU 

A TDIU is provided where the combined schedular rating for service-connected diseases and disabilities is less than total, or 100 percent. 38 C.F.R. § 4.16(a). A TDIU is considered a lesser benefit than the 100 percent rating, and the grant of a 100 percent rating generally renders moot the issue of entitlement to a TDIU for the period when the 100 percent rating is in effect. An exception to this is a separate award at the housebound rate or a TDIU predicated on a single disability (perhaps not ratable at the schedular 100-percent level) when considered together with another disability separately rated at 60 percent or greater may warrant payment of special monthly compensation (SMC) under 38 U.S.C. § 1114(s). Bradley v. Peake, 22 Vet. App. 280 (2008).

An exception to this is a separate award at the housebound rate or a TDIU predicated on a single disability (perhaps not ratable at the schedular 100-percent level) when considered together with another disability separately rated at 60 percent or greater may warrant payment of special monthly compensation (SMC) under 38 U.S.C. § 1114(s). Bradley v. Peake, 22 Vet. App. 280 (2008).

In this case, the Veteran is not seeking SMC at the housebound rate, and the record does not otherwise reasonably raise that matter. Further, his acquired psychiatric disorder is the only service-connected disability. As the Veteran does not have any additional service-connected disabilities independently ratable at 60 percent, an award of SMC is not warranted. See id. 

The claim for a TDIU and an increased rating for an acquired psychiatric disorder have been recognized as arising at the same time and involving the same evidence. Hence, the grant of the 100 percent rating renders the claim for TDIU moot. The appeal as to the TDIU issue is therefore dismissed. To the extent that the Veteran argues entitlement to a TDIU within the one-year period before the date of claim, the Board finds that TDIU is not warranted because the Veteran was working as a chef, and there is no evidence of any increased impairment in his occupational functioning during that year. See November 2018 Veterans Application for Increased Compensation Based on Unemployability. 

 

S.C. Krembs

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Ian Altendorfer, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.