Citation Nr: 21049986
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 17-52 435
DATE: August 13, 2021

ORDER

Entitlement to a 50 percent rating for degenerative arthritis of the lumbar spine is granted effective August 31, 2016.

Entitlement to a disability rating due to individual unemployability (TDIU) prior to January 19, 2017 is granted.

Entitlement to special monthly compensation (SMC) at the housebound rate is granted. 

REMANDED

Entitlement to a rating in excess of 50 percent for degenerative arthritis of the lumbar spine is remanded.

FINDINGS OF FACT

1. The Veteran's degenerative arthritis of the lumbar spine is manifested by the functional equivalent of unfavorable ankylosis of the thoracolumbar spine, effective August 31, 2016.

2. The Veteran's service-connected degenerative arthritis of the lumbar spine has prevented him from maintaining or sustaining substantial gainful employment since his separation from service. 

3. The Veteran is in receipt of a TDIU on the basis of one disability with additional service-connected disability or disabilities ratable as 60 percent or more.

CONCLUSIONS OF LAW

1. The criteria for a 50 percent rating for degenerative arthritis of the lumbar spine have been met effective August 31, 2016. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5242 (2020).

2. Beginning August 31, 2016, the schedular criteria for TDIU are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.16 (2020).

3. The criteria for SMC at the housebound rate have been met. 38 U.S.C. §§ 1114, 5107 (2012); 38 C.F.R. §§ 3.350, 3.352 (2020).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served honorably in the United States Army from May 2011 to August 2016.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a March 2017 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran testified at a hearing before the undersigned in August 2021. 

1. Entitlement to a 50 percent rating for degenerative arthritis of the lumbar spine

The Veteran's degenerative arthritis of the lumbar spine is rated as 10 percent disabling prior to January 1, 2019 and 40 percent disabling thereafter pursuant to Diagnostic Code 5242. Diagnostic Code 5242 is rated under the General Rating Formula for Diseases and Injuries of the Spine. For the reasons discussed herein, the Board finds the Veteran's functional limitations considering reports of flare ups are more closely approximated by the rating criteria for a 50 percent rating effective August 31, 2016. The Veteran filed a new claim to consider the rating of his degenerative arthritis in January 2017. Thus, the Board has the jurisdiction to consider functional limitations of the disability up to one year prior to the application for increase. For the reasons discussed herein, the Board finds that an increased, 50 percent rating is warranted effective August 31, 2016, the date the Veteran separated from active duty service. 

Under the current General Rating Formula for Diseases and Injuries of the Spine, a 10 percent evaluation is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, a combined range of motions of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertical body fracture with loss of 50 percent or more height. 

A 20 percent evaluation is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 40 percent evaluation is assigned for forward flexion of the thoracolumbar spine of 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. 

A 50 percent evaluation is assigned for unfavorable ankylosis of the entire thoracolumbar spine. 

A 100 percent evaluation is assigned for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, Diagnostic Codes 5235 to 5243.

Intervertebral disc syndrome (IVDS) is rated either under the General Rating Formula for Diseases and Injuries of the Spine (General Formula) or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under 4.25. 38 C.F.R. § 4.71a, Code 5243.

The Formula for Rating IVDS on Incapacitating Episodes provides that incapacitating episodes having a total duration of at least 1 week but less than 2 weeks during the past 12 months warrants a 10 percent rating. Incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months warrants a 20 percent rating. Incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months warrants a 40 percent rating. A 60 percent rating is warranted when there are incapacitating episodes having a total duration of at least 6 weeks during the past 12 months.

For purposes of rating under Code 5243, an "incapacitating episode" is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note 1. As no episodes requiring bed rest prescribed by a physician and treatment by a physician are shown in the instant case, further discussion of the criteria for rating based on incapacitating episodes is not necessary.

Associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment are evaluated separately under an appropriate Diagnostic Code. 38 C.F.R. § 4.71a, Diagnostic Codes 5235 to 5243, Note (1).

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a, Diagnostic Codes 5235 to 5243, Note (2).

Turning to the evidence, the Veteran was seen for a VA examination in June 2016, prior to his discharge from service. The examiner noted a diagnosis of degenerative disc disease of the lumbar spine and microdiscectomy of the lumbar spine. Range of motion testing showed forward flexion to 65 degrees, extension to 20 degrees, lateral flexion to 20 degrees bilaterally, and lateral rotation to 30 degrees bilaterally. The examiner noted the Veteran endorsed functional limitations during flare ups to include no running, no heavy walking, and no prolonged sitting or standing. However, the examiner did not provide an estimate of the Veteran's reduced range of motion during flare ups. The examiner noted the Veteran had IVDS, but that bedrest was not prescribed. 

In November 2016 and December 2016, Dr. E.D. of the Camarillo Spine & Nerve Institute submitted letters in regard to the Veteran's back condition. The doctor noted the Veteran's microdiscectomy which had minimum benefit in March 2016. The doctor noted the Veteran's spine was improving gradually with treatment. 

Upon VA examination in February 2017, a VA examiner noted the Veteran to have degenerative arthritis of the lumbar spine. Range of motion testing showed forward flexion to 65 degrees, extension to 20 degrees, lateral flexion to 20 degrees bilaterally, and lateral rotation to 20 degrees bilaterally. Range of motion following repetitive use and during periods of flare ups was limited to forward flexion to 15 degrees, extension to 15 degrees, lateral flexion to 15 degrees bilaterally, and lateral rotation to 15 degrees bilaterally. The examiner noted the Veteran's pain contributed to less movement than normal, disturbed locomotion, and interference with sitting and standing. No ankylosis was found, but the examiner noted the Veteran would have limitations bending, standing, twisting, and performing strenuous activities. The examiner noted the Veteran had IVDS, but that bedrest was not prescribed. 

In June 2017, the Veteran's nurse practitioner stated that the Veteran had had severe back pain since his initial injury in May 2013. He further stated that the Veteran's back pain has impacted his quality of life to include severely limiting his ability to walk and care for his young children.

Upon VA examination in September 2017, the examiner found the diagnosis of degenerative arthritis of the lumbar spine. Range of motion testing showed forward flexion to 60 degrees, extension to 20 degrees, lateral flexion to 25 degrees bilaterally, and lateral rotation to 25 degrees bilaterally. Range of motion following repetitive use and during periods of flare ups was limited to forward flexion to 50 degrees, extension to 10 degrees, lateral flexion to 15 degrees bilaterally, and lateral rotation to 15 degrees bilaterally. The Veteran's guarding or muscle spasms has resulted in abnormal gait or abnormal spine contour. The examiner noted the Veteran's pain contributed to less movement than normal, disturbed locomotion, and interference with sitting and standing. No ankylosis was found. The examiner noted the Veteran had IVDS, but that bedrest was not prescribed. 

Upon VA examination in June 2021, the examiner found degenerative arthritis of the lumbar spine. Range of motion testing showed forward flexion to 35 degrees, extension to 10 degrees, right lateral flexion to 5 degrees, left lateral flexion to 10 degrees, right lateral rotation to 20 degrees, and left lateral rotation to 15 degrees. Observed repetitive use range of motion testing showed further limitations of forward flexion to 30 degrees, extension to 5 degrees, right lateral flexion to 5 degrees, left lateral flexion to 5 degrees, right lateral rotation to 15 degrees, and left lateral rotation to 10 degrees. The Veteran's repetitive use over time further limited the Veteran's forward flexion to 15 degrees. The examiner did not provide range of motion limitations during periods of flare ups. The Veteran described flare ups as being unable to sit or stand for long period of time and that his constant pain was very distracting. The examiner found no evidence of ankylosis. However, the examiner remarked that the Veteran can barely walk, sit, or stand for extended periods of time. The examiner further noted that Veteran required a cane to walk and needs the help of other people. The examiner opined that the Veteran was very debilitated by his back condition. 

In August 2021, the Veteran and his wife testified before the undersigned. The Veteran stated that he has to limit his activities and that he often engaged in bedrest, although noting that a doctor has never prescribed it. The Veteran stated that his pain used to be tolerable, but now it is as though he is being kicked. The Veteran stated that even lying down no longer alleviates his pain.

Affording the Veteran the benefit of the doubt, the Board finds that for the entire period at issue, from August 31, 2016, the Veteran's functional limitations were more closely approximated by a 50 percent rating. While no examiner has opined that the Veteran has unfavorable ankylosis, the range of motion testing consistently showed that the Veteran's range of motion was extremely limited, particularly on repetitive use, resulting in the functional equivalent of ankylosis. Additionally, the examinations of record show that he has an abnormal gait and struggles significantly with sitting, standing, and walking. Further, there is nothing in the record to suggest that his condition changed significantly between his discharge from service and now. Additionally, the Board notes that the initial June 2016 VA examination did not address the Veteran's reports of flare ups in which he would have increased pain. 

However, the Board has determined that the evidence of record is insufficient to determine if the Veteran's back impairment warrants a rating in excess of 50 percent. Therefore, the issue of entitlement to a rating in excess of 50 percent is discussed in the remand portion of this decision.

In sum, a 50 percent rating for degenerative arthritis of the lumbar spine is granted effective August 31, 2016. 

2. Entitlement to a disability rating due to individual unemployability (TDIU) prior to January 19, 2017

Entitlement to a TDIU was established by the RO effective January 19, 2017. However, the issue of entitlement to a TDIU prior to January 19, 2017 remains ripe for appellate review. For the reasons discussed herein, the Board finds that a TDIU is warranted effective August 31, 2016, the day after the Veteran's separation from service. 

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the Veteran is precluded, by reason of his service- connected disabilities, from obtaining and maintaining substantially gainful employment consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16.

Total disability ratings for compensation based on individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's education, special training, and previous work experience, but not to his age or to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; see also Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

The evidence shows that the Veteran was service connected for PTSD rated as 50 percent disabling prior to March 18, 2019 and 70 percent disabling thereafter; degenerative arthritis of the lumbar spine rated as 50 percent disabling from August 31, 2016; radiculopathy of the left sciatic nerve rated as 10 percent disabling from January 18, 2017 and 20 percent disabling from March 10, 2021; radiculopathy of the right sciatic nerve rated as 10 percent disabling from January 18, 2017 and 20 percent disabling from September 5, 2017; tinnitus rated as 10 percent disabling from August 31, 2016, and a painful scar rated as 10 percent disabling since August 31, 2016. The Veteran is also service connected for right shoulder bicipital tendonitis, status post right ankle fracture, bilateral flat foot, and scar of the lumbar spine, which are rated as noncompensable. The Veteran's combined disability rating was 80 percent from August 31, 2016 and 90 percent from September 5, 2017. 38 C.F.R. § 4.25. Therefore, as of August 31, 2016, the schedular percentage criteria for a TDIU have been met. 38 C.F.R. § 4.16(a).

Turning to the evidence, first, the Board must determine when the Veteran was actually unemployed from August 31, 2016 to January 19, 2017. The Veteran's July 2017 Application for Increased Compensation Based on Unemployability lists the date the Veteran last worked as August 30, 2016, the date of his separation from the U.S. Army. Thus, the Board finds the credible evidence of record supports that the Veteran has not worked since his separation from the Army. 

In this case, the evidence indicates that the Veteran has had difficulty maintaining a job based solely on his lumbar spine symptoms. To this end, a June 2017 letter from the Veteran's nurse practitioner stated that the Veteran's back pain has significantly impacted his quality of life and his pain prevents him from maintaining gainful employment. 

Based on the evidence above and resolving all reasonable doubt in the Veteran's favor, the Board finds that the Veteran's service-connected degenerative arthritis of the lumbar spine rendered him unable to secure or follow a substantially gainful occupation.

Accordingly, resolving all reasonable doubt in the Veteran's favor, the Board finds that entitlement to a TDIU is warranted beginning August 31, 2016. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

3. Entitlement to SMC at the housebound rate

SMC at the housebound rate is warranted if, in addition to having a single permanent disability rated 100 percent disabling under the VA's Schedule for Rating Disabilities, the Veteran: (1) has additional disability or disabilities independently ratable at 60 percent or more, separate and distinct from the permanent disability rated as 100 percent disabling and involving different anatomical segments or bodily systems, or, (2) is permanently housebound by reason of disability or disabilities. 38 U.S.C. § 1114(s).

The Board notes that a TDIU rating predicated on one disability, although not ratable at the schedular 100 percent level, when considered together with another disability or disabilities separately rated at 60 percent or more, warrants SMC at the housebound rate. See Bradley v. Peake, 22 Vet. App. 280, 293-94 (2008).

As discussed above, the RO previously found that the Veteran was unemployable due to a combination of his service-connected disabilities. However, the Board also finds that the Veteran's service-connected degenerative arthritis of the lumbar spine would alone be enough to preclude substantial gainful employment. Thus, the Board finds that the Veteran's TDIU rating may be predicated on one disability. 

The remainder of the Veteran's compensable service-connected disabilities to include posttraumatic stress disorder, radiculopathy of the bilateral lower extremitas, tinnitus, and a painful scar result in an 80 percent combined disability rating. Thereby, the Veteran also has established the first prong of SMC at the housebound rate. 

The Board therefore concludes that the preponderance of the evidence supports entitlement to SMC at the housebound rate. 

REASONS FOR REMAND

1. Entitlement to a rating in excess of 50 percent for degenerative arthritis of the lumbar spine is remanded.

The Veteran contends that his degenerative arthritis of the lumbar spine warrants a rating in excess of 50 percent as established herein. 

At the August 2021 Board hearing the Veteran stated that his back impairment often limited him to his bed. The Board acknowledges that the Veteran most recently had a VA examination in June 2021. However, the evidence of record suggests that the Veteran's spine impairment to include IVDS may have required periods of incapacitation equivalent to physician prescribed bed rest. 

Further, the Veteran has stated that he has received private treatment from Dr. Edmond Dooman of the Camarillo Spine & Nerve Institute. The Board notes that the last evidence of record from the Camarillo Spine & Nerve Institute was from May 2017, thus updated private records must be obtained. 

The matters are REMANDED for the following actions:

1. Ask the Veteran to complete a VA Form 21-4142 for Dr. Edmond Dooman of the Camarillo Spine & Nerve Institute. Make two requests for the updated authorized records from Dr. Edmond Dooman of the Camarillo Spine & Nerve Institute unless it is clear after the first request that a second request would be futile. 

2. Following completion of the first directive, the Veteran should be scheduled for a VA examination with appropriate examiner in order to determine the nature and severity of his service-connected connected lumbar spine condition to include degenerative arthritis of the lumbar spine. The claims folder must be made available to the examiner for review in connection with the examination. The examiner must consider the Veteran's subjective complaints of flare-ups including the testimony given at the August 2021 Board hearing. The examination report must reflect that such a review was conducted. 

The examiner should identify any symptoms that the Veteran currently manifests or has manifested that are attributable to his service-connected connected degenerative arthritis of the lumbar spine. All appropriate testing, including range of motion, should be performed. 

The examiner is asked to describe whether pain significantly limits functional ability during flare-ups, and if so, the examiner must estimate range of motion during flares. IF THE EXAMINATION DOES NOT TAKE PLACE DURING A FLARE, THE EXAMINER MUST GLEAN INFORMATION REGARDING THE FLARES' SEVERITY, FREQUENCY, DURATION, AND FUNCTIONAL LOSS MANIFESTATIONS FROM THE VETERAN, MEDICAL RECORDS, AND OTHER AVAILABLE SOURCES. EFFORTS TO OBTAIN SUCH INFORMATION MUST BE DOCUMENTED. If there is no pain and/or no limitation of function, such facts must be noted in the report.

The examiner is asked to address if the Veteran has IVDS and if his symptoms rise to the level of incapacitating episodes with a total duration of six weeks during the last month. In rendering this opinion, the examiner should consider any private treatment records obtained and the Veteran's competent and credible lay statements.

Finally, the examiner is asked to address whether the Veteran's combination of impairments to include his lumbar spine impairment significantly limits the Veteran insomuch that he requires the regular need of aid and attendance. 

 

A. S. CARACCIOLO

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Laura C. Owens

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.